IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF: | MISC. NO. 23-00263 JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC | FINDINGS AND RECOMMENDATION TO GRANT JOHN DOE'S MOTION TO QUASH 512(h) SUBPOENA |

FINDINGS AND RECOMMENDATION TO GRANT JOHN DOE'S
MOTION TO QUASH 512(h) SUBPOENA

Before the Court is John Doe's Motion to Quash Subpoena (Motion).

See John Doe (Doe) Mot., ECF No. 4.  Petitioners Voltage Holdings, LLC,

Millennium Funding, Inc., Screen Media Ventures, LLC, and Capstone Studios

Corp. filed their Opposition on May 29, 2023.  See Pet'rs' Opp'n, ECF No. 6.  The

Court finds this Motion suitable for disposition without a hearing pursuant to Local

Rule 7.1(c).  After careful consideration of the relevant legal authority, the Court

FINDS AND RECOMMENDS that Doe's Motion be GRANTED and that

Petitioners' 512(h) subpoena be quashed. [1]

---

[1] Because Petitioners obtained the relevant subpoena in this case on "a
freestanding basis independent of a complaint or litigation," the "subpoena is its
own civil case, and the motion to quash is dispositive of the sole issue presented in

<u>BACKGROUND</u>

This case concerns Petitioners' use of the subpoena provision of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. Section 512(h), to identify internet users who the Petitioners believe are infringing on their copyrights.

On April 13, 2023, Petitioners filed an Application for 512(h) Subpoena (Application) to serve on Internet Service Provider (ISP), Cox Communications, LLC and CoxCom LLC (collectively, "Cox"), to discover the names of several Cox subscribers who appear to have been trading files of copyrighted movies using the protocol BitTorrent.  <u>See</u> Application for 512(h) Subpoena, ECF No. 1-3, Ex. 2 at 2 (where Petitioners identify the relevant infringement occurring via a BitTorrent protocol).

"BitTorrent is not a software program, but rather describes a protocol—a set of rules governing the communication between computers—that allows individual computers on the Internet to transfer files directly to other

---

the case -- whether the subpoena should be enforced or not.  Once that question is answered, the dispute between the parties is fully decided."  <u>In re DMCA Subpoena to Reddit, Inc.</u>, 441 F. Supp. 3d 875, 880 (N.D. Cal. 2020).  In the absence of consent by all the parties, as is the case here, the Court must address this dispositive issue in the form of a findings and recommendation to the District Court.  <u>See id.</u> at 881 (citing 28 U.S.C. § 636(b)(1)(B)-(C)).  Accordingly, within fourteen days after a party is served with the Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), a party may file written objections in the United States District Court.  A party must file any objections within the fourteen-day period to preserve appellate review of the Findings and Recommendation.

2

computers."  BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc., 881 F.3d 293,

298 (4th Cir. 2018).  This method of file sharing is commonly known as "peer-to-

peer" (P2P) file sharing and contrasts with the traditional method of downloading a

file from a central server using a Web browser.  See id.

   P2P systems allow users to disseminate files stored on their computers

to other internet users.  See In re Charter Commc'ns, Inc., Subpoena Enf't Matter,

393 F.3d 771, 773 (8th Cir. 2005).  By utilizing this technology, an internet user

can directly search the MP3 file libraries of other users, with no web site being

involved because the transferred files are not stored on the computers of the ISP

providing the P2P users with internet access.  See id. (citing Recording Indus.

Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229, 1232 (D.C. Cir.

2003)).

   While Cox has not opposed Petitioners' Application, it appears from

other cases and the circumstances of this case that Cox's role in disseminating the

allegedly copyrighted material is confined to acting as a mere "conduit" in the

transfer of files through its network including the files at issue in this case.  "As a

conduit ISP, Cox only provides Internet access to its subscribers.  Cox does not

create or sell software that operates using the BitTorrent protocol, store copyright-

infringing material on its own computer servers, or control what its subscribers

3

store on their personal computers." <u>Cox Commc'ns, Inc.</u>, 881 F.3d at 299. In other words, Cox merely provides the internet that connects two users so that they are able to exchange allegedly infringing material on their personal computers.

Petitioners' Subsection 512(h) subpoena (referred to herein as "512(h) Subpoena" or "Subpoena") was issued on April 13, 2023, demanding certain subscriber information including the names of Cox subscribers associated with several IP addresses, their last known address, last known telephone number, and any electronic mail addresses associated with the subscribers. <u>See</u> Application for 512(h) Subpoena, ECF No. 1-4 at 1.

On May 24, 2023, one of those subscribers, Doe, appearing *pro se*, filed a letter with this Court, which was construed as the present Motion to Quash the 512(h) Subpoena. <u>See</u> Doe's Mot., ECF No. 4. In the Motion, Doe objects to the Subpoena, stating that he and his family "erroneously forgot to add a password" to their Wi-Fi network and that they do not have the infringing material on their computers. <u>See</u> <u>id.</u> In their Opposition, Petitioners respond to Doe's objection; however, neither party analyzes whether the 512(h) Subpoena was valid.

<u>DISCUSSION</u>

When analyzing motions to quash 512(h) subpoenas, courts first address the validity of the subpoena.  <u>E.g.</u>, <u>In re DMCA Subpoena to eBay, Inc.</u>, 2015 WL 3555270, at *2 (S.D. Cal. June 5, 2015); <u>Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB</u>, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012).

## I.    Validity of 512(h) Subpoena

The DMCA provision governing issuance of a subpoena to identify an infringer, 17 U.S.C. Section 512(h)(1)-(2), provides in part as follows:

> (1) Request.--A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.

> (2) Contents of request.--The request may be made by filing with the clerk--
> **(A) a copy of a notification described in subsection (c)(3)(A);**
> (B) a proposed subpoena; and
> (C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.

17 U.S.C. § 512(h)(1)-(2) (emphasis added).

5

The notice provision in Subsection 512(c)(3)(A) (referred to herein as

a "512(c)(3)(A) notice") requires the following elements in the notification:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is **to be removed** or **access to which is to be disabled**, and information reasonably sufficient to permit the service provider to locate the material.

> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

> (v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A)(i)-(vi) (emphasis added).  To comply with the

512(c)(3)(A) notice provision, a notice must contain *all* of the above requirements.

See Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1112 (9th Cir. 2007).  This

6

notification is a mandatory part of the subpoena request and a condition precedent to the issuance of a subpoena because the statute further provides, as the "[b]asis for granting subpoena," that the notification filed must satisfy the provisions of subsection 512(c)(3)(A).  See In re Charter, 393 F.3d at 775 (citing 17 U.S.C. § 512(h)(4)).  Therefore, a 512(h) subpoena may only issue upon proof of a notice to an ISP that complies with each provision in Subsection (c)(3)(A) of the DMCA.

While it does not appear that the Ninth Circuit or the District of Hawaii has addressed whether a copyright owner can meet the requirements of Subsection 512(c)(3)(A) (and thereafter obtain a 512(h) subpoena) when dealing with an ISP that merely acts a conduit between two P2P infringers, the District of Columbia and Eighth Circuits have held that it cannot.

In Verizon and In re Charter, the DC Circuit and Eighth Circuit held that a 512(h) subpoena may be issued only to an ISP engaged in *storing* on its servers material that is infringing or the subject of infringing activity.  See Verizon, 351 F.3d at 1233 ("We conclude from both the terms of § 512(h) and the overall structure of § 512 that, . . . a [512(h)] subpoena may be issued only to an ISP engaged in storing on its servers material that is infringing or the subject of infringing activity."); In re Charter, 393 F.3d at 777 ("We agree with and adopt the reasoning of the United States Court of Appeals for the District of Columbia

7

Circuit in <u>Verizon</u> as it pertains to this statutory issue. Thus, because the parties do not dispute that [the ISP's] function was limited to acting as a conduit for the allegedly copyright protected material, we agree § 512(h) does not authorize the subpoenas issued here."). Twitter and eBay, for example, store information when users post to their platforms and, therefore, may be subject to a 512(h) subpoena to identify a user who is posting infringing material to their platforms. <u>See</u> <u>In re DMCA § 512(h) Subpoena to Twitter, Inc.</u>, 2021 WL 6135300, at *2 (N.D. Cal. Dec. 29, 2021); <u>Rosen v. eBay, Inc.</u>, 2015 WL 1600081, at *5 (C.D. Cal. Jan. 16, 2015) (discussing how in creating listings, eBay creates a copy of the copyrighted image and stores it on its servers).

In contrast, 512(h) subpoenas have been held to be invalid when issued to ISPs acting as mere conduits. That is, when the infringement complained of is done through P2P file sharing such as through a BitTorrent protocol, the ISP can neither "remove" nor "disable access to" the infringing material because that material is not stored on the ISP's servers. <u>See</u> <u>Verizon</u>, 351 F.3d at 1237 ("We think it clear . . . that § 512(h) applies to an ISP storing infringing material on its servers in any capacity . . . and does not apply to an ISP routing infringing material to or from a personal computer owned and used by a subscriber."); 17 U.S.C. § 512(c)(3)(A)(iii). No matter what information the copyright owner may provide in

its 512(c)(3)(A) notice, a conduit ISP cannot remove or disable one user's access to infringing material resident on another user's computer because the ISP does not control the content on its subscribers' computer. [2]  See Verizon, 351 F.3d at 1235; see also id. at 1236 (emphasis added) ("The [copyright owner's] notification identifies absolutely no material [the ISP] could remove or access to which it could disable, **which indicates to us that § 512(c)(3)(A) concerns means of infringement *other* than P2P file sharing**.").  In other words, the ISP is powerless to act upon the infringing material.

In sum, the validity of a 512(h) subpoena depends on whether the copyright owner has provided the ISP with a 512(c)(3)(A) notice that meets all of the criteria set forth in each of the subparts 512(c)(3)(A), and any notice to an ISP concerning its activity as a mere conduit cannot satisfy subpart 512(c)(2)(A)(iii) because there is no infringing material to be removed or access to which can be

---

[2] The Court notes that others have argued that an ISP can indeed "disable access" to infringing material by terminating the offending subscriber's internet account.  See Verizon, 351 F.3d at 1235.  However, the D.C. Circuit dispensed with this argument by noting that, in the text of the DMCA, Congress distinguished the concepts of disabling access to infringing material and disabling access to a subscribers' account.  See id.  "[W]here different terms are used in a single piece of legislation, the court must presume that Congress intended the terms have different meanings."  Id. (citation omitted).  That Congress distinguished these concepts in the DMCA establishes that terminating a subscriber's account is not the same as removing or disabling access by others to the infringing material resident on the subscriber's computer.  See id.

disabled.  See Verizon, 351 F.3d at 1236 ("A § 512(h) subpoena simply cannot

meet the notice requirement of § 512(c)(3)(A)(iii).").

        In further support of the conclusion that 512(h) subpoenas are not

available to serve on ISPs acting as conduits for P2P file sharing infringement, the

courts in Verizon and In re Charter focused on the structure of the DMCA.  The

DMCA creates safe harbors that shield ISPs from liability for copyright

infringement.  "Each safe harbor applies to a particular ISP function."  In re

Charter, 393 F.3d at 775; see also Verizon, 351 F.3d 1229, 1234 (discussing the

differences between the four safe harbors).  "The first safe harbor, under § 512(a),

limits the liability of ISPs when they do nothing more than transmit, route, or

provide connections for copyrighted material—that is, when the ISP is a *mere

conduit* for the transmission."  In re Charter, 393 F.3d at 775 (emphasis added).

"The second safe harbor, under § 512(b), protects ISPs for 'system caching,' that

is, instances when they provide intermediate and temporary storage of material on

a system or network under certain conditions."  Id.  "The third safe harbor, under

§ 512(c), limits the liability of an ISP for infringing material 'residing on [the

ISP's] system or network at the direction of its users.'"  Id.  "The fourth safe harbor,

under § 512(d), protects an ISP when it merely links users to online locations

containing infringing material."  Id.

The notification provision is found within Subsection 512(c), or the storage-at-the-direction-of-users safe harbor.  See In re Charter, 393 F.3d at 776. The notification provision is also referenced, however, in two other safe harbors— subsections (b) and (d) - the "system caching" and "linking" safe harbors.  See id. Each of these three subsections "protect an ISP from liability if the ISP responds expeditiously to remove, or disable access to, the material that is claimed to be infringing *upon notification* of claimed infringement as described in [§ 512](c)(3)." Id. (emphasis added).

However, the <u>Verizon</u> and <u>In re Charter</u> courts distinguished the safe harbor under Subsection 512(a) - which does not require notification to an ISP that acts as a mere conduit for the transmission–from the safe harbors established under Subsections 512(b)-(d), which do require notification to the ISP.  See <u>Maximized Living, Inc. v. Google, Inc.</u>, 2011 WL 6749017, at *5 (N.D. Cal. Dec. 22, 2011) (citing <u>In re Charter</u>, 393 F.3d at 776); <u>see also</u> <u>Verizon</u>, 351 F.3d at 1234 ("Notably present in §§ 512(b)-(d), and notably absent from § 512(a), is the so-called notice and take-down provision.").  The Eighth Circuit determined that "**a specific purpose of the notification provision is to allow an ISP, *after notification*, the opportunity to remove or disable access to infringing material and thereby protect itself from liability for copyright infringement**."

<u>Maximized</u>, 2011 WL 6749017, at *5 (emphasis added) (citing <u>In re Charter</u>, 393 F.3d at 776). "The absence of the remove-or-disable-access provision (and the concomitant notification provision) [in the safe harbor provision of § 512(a)] makes sense where an ISP merely acts as a conduit for infringing material—rather than directly storing, caching, or linking to infringing material—because the ISP has no ability to remove the infringing material from its system or disable access to the infringing material." <u>In re Charter</u>, 393 F.3d at 776. Based on this analysis of the structure of the statute, a copyright owner may not request a 512(h) subpoena for an ISP which merely acts as a conduit for P2P file sharing. <u>See</u> <u>Maximized</u>, 2011 WL 6749017, at *5 (citing <u>In re Charter</u>, 393 F.3d at 776-77); <u>Verizon</u>, 351 F.3d at 1236 ("[W]e agree with Verizon that § 512(h) does not by its terms authorize the subpoenas issued here.").

       Accordingly, under <u>Verizon</u> and <u>In re Charter</u>, a 512(h) subpoena may not be issued to a conduit ISP for P2P file sharing infringement because a conduit ISP cannot comply with a 512(c)(3)(A) notice as there is no infringing material to be removed or to disable access to, and, further, the 512(c)(3)(A) notice provision was not intended to apply to ISPs acting as mere conduits.

       District Courts in the Ninth and Fifth Circuits have agreed with the D.C. and Eighth Circuits' reasoning for denying issuance of a 512(h) subpoena

when the circumstances involve an ISP acting as a conduit in P2P infringement.

See Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified

by Hash B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB, 2012 WL

4387420, at *2 (S.D. Tex. Sept. 25, 2012) (relying in Verizon and In re Charter and

stating that "a copyright owner cannot request a subpoena for an ISP which merely

acts as a conduit for data."); id. at *3 ("While this Court acknowledges it is not

bound to follow the precedent of Verizon, it finds compelling the statutory analysis

employed in Verizon."); eBay, Inc., 2015 WL 3555270, at *3 ("This Court agrees

that allegedly infringing material must be available to be removed for the

§ 512(c)(3) notification to have any effect.  See § 512(c)(3)(A)(iii).  This Court

also agrees that a DMCA subpoena, without a satisfactory notification being

served simultaneously with or subsequent to the notification, is not enforceable.");

Maximized Living, Inc. v. Google, Inc., 2011 WL 6749017, at *6 (N.D. Cal. Dec.

22, 2011) ("This Court agrees with the reasoning of [Verizon] and holds that the

subpoena power of § 512(h) is limited to currently infringing activity and does not

reach former infringing activity that has ceased and thus can no longer be removed

or disabled.").

        Here, this Court also agrees with the reasoning in Verizon and In re

Charter.  The Court FINDS AND RECOMMENDS that the 512(h) Subpoena be

13

quashed because, as stated above, subpart 512(c)(3)(A)(iii) required Petitioners to identify in their 512(c)(3)(A) notice to Cox the infringing material that could be removed or access to which can be disabled, which Petitioners could not do because Cox's role in the alleged infringement was limited to providing the internet service that connected P2P subscribers utilizing a BitTorrent protocol to allegedly download and share movies between their personal computers; there was nothing stored on Cox's servers to be taken down.  Because Petitioners' 512(c)(3)(A) notice did not comply with subpart 512(c)(2)(A)(iii) (and it needed to comply with each provision of 512(c)(3)(A), see Perfect 10, 488 F.3d at 1112 and In re Charter, 393 F.3d at 775), Petitioners were not entitled to the 512(h) Subpoena.[3]

While the validity of the 512(h) Subpoena under Verizon and In re Charter was not discussed in their Opposition, Petitioners were aware that the Court may quash the 512(h) Subpoena as invalid because they cited to Verizon and In re Charter in their original Application for the Subpoena–two cases that quashed 512(h) subpoenas to conduit ISPs where the infringement concerned P2P file

---

[3] The Court notes that there are alternative avenues to seeking Doe's identity including a "John Doe" lawsuit, many of which are pending in district courts across the country.  In such a lawsuit, Petitioners could file the John Doe suit together with a motion for third-party discovery to identify an otherwise anonymous John Doe defendant.

sharing. <u>See</u> Application for 512(h) Subpoena, ECF No. 1 at 4. Petitioners chose not to analyze why this case is distinguishable from other P2P file sharing infringements cases involving 512(h) subpoenas in their Opposition. At the very least, in citing to <u>Verizon</u> and <u>In Re Charter</u> in their Application, it appears that Petitioners agree that Cox is a conduit ISP.

Based on the foregoing and the reasoning discussed throughout this Findings and Recommendation, the Court RECOMMENDS that the 512(h) Subpoena be quashed.[4]

## II.    Information Already Received By Petitioners

The Court points out that until the filing of this Findings and Recommendation, there have been no obstacles to prevent Petitioners from making use of any information they already received from Cox as to the other John Doe identities requested in their 512(h) Subpoena. Accordingly, if the District Court adopts this Findings and Recommendation and quashes the 512(h) Subpoena, the Court further RECOMMENDS that Petitioners be ordered to return and/or destroy any information obtained from the Subpoena, to maintain no further record of the

---

[4] Because the Court finds and recommends that the Subpoena was not validly issued, the Court does not address Doe's argument that he and his family failed to add a password to their Wi-Fi and that, because of this, the infringers are not Doe and his family but some unknown third-party who accessed their Wi-Fi.

15

information from the Subpoena, and to make no further use of the subscriber data

obtained from the Subpoena.  See In re Charter, 393 F.3d at 778.

CONCLUSION

The Court FINDS AND RECOMMENDS that the 512(h) Subpoena,

ECF No. 3, be QUASHED and that Petitioners be ordered return and/or destroy

any information derived from the Subpoena, to maintain no further record of the

information obtained the Subpoena, and to make no further use of the subscriber

data obtained from the Subpoena.

Additionally, the Court ORDERS Petitioners to serve a copy of this

Findings and Recommendation on Cox Communications, LLC and CoxCom LLC

with instructions for each to provide this Findings and Recommendation to John

Doe, I.P. Address: 50.159.108.38.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, AUGUST 31, 2023.



Wes Reber Porter
United States Magistrate Judge

**IN THE MATTER OF: SUBPOENA OF INTERNET SUBSCRIBERS OF COX
COMMUNICATIONS, LLC AND COXCOM LLC; MISC, NO. 23-00263 JMS-
WRP; FINDINGS AND RECOMMENDATION TO GRANT MOTION TO
QUASH 512(H) SUBPOENA**