CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena | **Case No.:** 1:23-mc-263-JMS-WRP (Copyright) |
| Internet subscribers of Cox Communications, LLC and CoxCom LLC | MEMORANDUM IN SUPPORT OF PETITIONERS' OBJECTIONS TO THE FINDINGS AND RECOMMENDATIONS |

**MEMORANDUM IN SUPPORT OF PETITIONERS' OBJECTIONS TO
<u>THE FINDINGS AND RECOMMENDATIONS</u>**

1

I.      **INTRODUCTION**

John Doe made a single page objection to Petitioners' §512(h) subpoena to Cox Communications, LLC and CoxCom LLC ("Cox") "…objecting to having my personal information released."[1]  Doc. #4.  In response to Magistrate Judge Porter's Order [Doc. #5] construing the objection as a motion to quash and ordering Petitioners to file a response, Petitioners filed an Opposition [Doc. #6] correctly pointing out that Doe failed to argue a privacy interest, burden or any other recognized legal basis for quashing.  Cox did not file any response.  Nor did Doe file a reply.  Nonetheless, Magistrate Judge Porter issued a Findings and Recommendation ("F&R") [Doc. #8] concluding that (i) Cox is a mere conduit service provider; and (ii) the §512(h) subpoena is invalid for being based upon a §512(c)(3)(A) notification to the mere conduit provider Cox.  The F&R concedes, "neither party analyzes whether the 512(h) Subpoena was valid".  F&R at p.4.  This is an understatement.  Nobody argued or submitted any evidence asserting Cox is a mere conduit provider.  Nor did the Magistrate Judge give even a hint that he was considering this issue.  Petitioners do not agree that Cox is a mere conduit because Cox assigns to its subscribers the Internet Protocol ("IP") addresses that are §512(d) information location tools linking to infringing material as mentioned in the Application for the subpoena.  *See* Doc. #1 at p.4 ("…Owner respectfully submits

---

[1] The objection did not comply with LR 5.2 for filing sealed documents.

2

that the [Ninth]² Circuit would likely conclude that 512(h) does also apply to ISPs that…provide **links** to infringing material") (emphasis added). Petitioners respectfully request that the Court sustain this objection, reject the F&R and overrule Doe's objection. The F&R also recommends the sledgehammer remedy that Petitioners be ordered to destroy all data received in response to the subpoena. Neither Doe nor Cox requested this extreme remedy. At most, the Court should only order Cox to not turnover Doe's name if it sustains Doe's objection.

## II. <u>LEGAL STANDARD</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review *de novo* those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *See* 28 U.S.C. § 636(b)(1).

## III. <u>ARGUMENT</u>

### A.  <u>Petitioners object to the F&R's Conclusion that Cox is a "mere" conduit.</u>

Although none of the parties briefed this issue, the F&R concludes that Cox acts as a mere conduit. *See* F&R at p.3. As one basis for this conclusion, the F&R cites the following language from *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 299 (4th Cir. 2018) ("*Cox*"):

> As a conduit ISP, Cox only provides Internet access to its subscribers. Cox does not create or sell software that operates using the BitTorrent

---

² Petitioners mentioning of Tenth was a typographical error.

3

> protocol, store copyright-infringing material on its own computer servers, or control what its subscribers store on their personal computers.

F&R at pp. 1-2.

However, this language of *Cox* does not state or imply that a conduit is *the only* service Cox provides. Indeed, *Cox* also states that Cox assigns the IP address to its subscribers. *See id.* (…since only the ISP can match the IP address to the subscriber's identity.). The IP address is "[t]he unique 32-bit address that specifies the location of each device or workstation on the Internet." *HB Prods., Inc. v. Faizan*, 603 F. Supp. 3d 910, 917 n.2 (D. Haw. 2022). Accordingly, the F&R's conclusion that Cox is a mere conduit was incorrect. As discussed below, the IP address Cox assigns to its subscriber is an information location tool as provided in 17 U.S.C. §512(d). Just like an "index, reference, pointer, or hypertext link", *Id.*, the IP address assigned to the subscriber by Cox linked other P2P users to the online location containing infringing material or infringing activity.

　　　The F&R states "At the very least, in citing to *Verizon* and *In Re Charter* in their Application, it appears that Petitioners agree that Cox is a conduit ISP." F&R at p.8. But Petitioners do not agree that Cox is a *mere* conduit. Rather, as Petitioners pointed out in their Application, the ISP also provides links to infringing material. *See* Doc. #1 at p.4. An ISP can be a conduit and provide other services such as links.

**B. Petitioners Object to the F&R's conclusion that the subpoena is invalid for failing to be based upon a proper §512(c)(3)(A) notification.**

4

As argued above, there is no sound technical basis for the F&R's conclusion that Cox is merely a conduit because Cox provides the IP addresses[3] that are the online locations used for linking other P2P users to the infringing material. The F&R did not consider the information location tool section (§512(d)) in making its flawed conclusion that the underlying notification did not satisfy the 17 U.S.C. §512(c)(3)(A) notification requirement[4]. Subsection (3) of 17 U.S.C. §512(d) explicitly states:

> upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, **the information described in subsection (c)(3)(A)(iii) shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link**.

(emphasis added)

The Notification [Doc. #1-3] satisfies all requirements of §512(d)(3). It provided the identification of the reference or link (IP address 70.161.172.138; Port 34307), the material claimed to be infringing (After Ever Happy (2022) [1080p] [WEBRip] [5.1] YTS.MX), the activity claimed to be infringing (sharing via

---

[3] *See* https://search.arin.net/rdap/?query=70.161.172.138 [last accessed on Sep. 10, 2023] (ARIN records showing that IP address is owned by Cox).

[4] Petitioners do not concede inapplicability of other sections such as §512(b) or (c) because there is no evidence on the record of what type of "Wi-Fi router" was at Doe's home. Many ISPs such as Cox provide public free Wi-Fi's to customers by including such routers in customers' homes. *See* Ex. "1" (Can I opt-out from having my device broadcasting the CoxWiFi Hotspot?); *see also* Dann Albright, "Is Your Router a Public Hotspot? Here's What It Means", July 12, 2016, https://www.makeuseof.com/tag/router-public-hotspot-heres-means/ [last accessed on Sept. 3, 2023].

BitTorrent) and information reasonably sufficient to permit the service provider to locate that reference or link (IP address 70.161.172.138; Port 34307).  Contrary to the F&R's conclusion that Cox can do nothing, Cox can disable access to the infringing material by, for example, null routing[5] the assigned IP address.

The F&R's analysis relies on *In re Charter Commc'ns, Inc., Subpoena Enf't Matter*, 393 F.3d 771, 773 (8th Cir. 2005) and *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1232 (D.C. Cir. 2003).  However, neither of these cases considered the information location tool section (§512(d)) because this argument was not made[6].  Indeed, *In re Charter* explicitly notes that the parties had agreed that the ISP's function was limited to a conduit. *In re Charter*, 393 F.3d at 777 ("…because the parties do not dispute that Charter's function was limited to acting as a conduit…").  In *Verizon* also it appears the parties agreed that the ISP's function was limited to conduit because the opinion compares the conduct to just sending email.  *See Verizon*, 351 F.3d at 1233.  That is not the case here.

## C.  Petitioners Object to the F&R's Conclusion that there can be no valid §512(c)(3)(A) notification for mere conduit providers.

---

[5] Null routing, which is also called black hole routing, is a network route that goes nowhere. *See* RFC 3882 "Configuring BGP to Block Denial-of-Service Attacks", Sept. 2004, https://datatracker.ietf.org/doc/html/rfc3882 [last accessed on Sept. 7, 2023]; *see also* Ax Sharma, "VPN provider bans BitTorrent after getting sued by film studios", Mar. 12, 2022, https://www.bleepingcomputer.com/news/security/vpn-provider-bans-bittorrent-after-getting-sued-by-film-studios/ [last accessed on Sept. 7, 2023[ ("It is a common practice in the hosting industry for a provider to "null route" a subscriber's IP address, effectively terminating a network connection, where it has received multiple notices of copyright infringement associated with an IP address.")

[6] It appears that null routing or black hole routing IP addresses begin to be widely adopted by networks in late 2000s early 2010s after *Verizon* and *In re Charter* decisions.

6

Petitioners disagree with the F&R's adoption of the conclusions of *In re Charter* and *Verizon* of nearly two decades ago that a notice to a conduit does not comply with subpart 512(c)(3)(A)(iii), particularly since there is no evidence on the record as to what type of services are provided by Cox to John Doe.

Firstly, the DC Circuit's conclusion in *Verizon* that "a subpoena may be issued only to an ISP…storing on its servers material…subject of infringing activity" (*Verizon*, 351 F.3d at 1233) contradicts the plain language of §512(d) which is applicable to information location tools and says nothing about servers or storing.

Secondly, the case law has developed in the last two decades. The Eighth Circuit recognized the irreparable harm that would be caused to copyright owners if they were unable to identify persons engaged in peer-to-peer file transfers. "…[A]s a practical matter, copyright owners cannot deter unlawful peer-to-peer file transfers unless they can learn the identities of persons engaged in that activity." *In re Charter*, 393 F.3d at 775 n.3 (8th Cir. 2005). The Eighth Circuit concluded that their decision was sound because "organizations…can file a John Doe suit, along with a motion for third-party discovery of the identity of the otherwise anonymous "John Doe" defendant." *Id.* The DC Circuit also recognized in *Verizon* that the copyright owner filed lawsuits against hundreds of individuals. *See Verizon*, 351 F.3d at 1232. 15 years later, the Ninth Circuit undermined the basis for John Doe lawsuits in *Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018) ("*Cobbler*") concluding:

> Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle. A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer.

*Id*.

Some Courts have questioned if a John Doe Complaint can satisfy a motion to dismiss in view of *Cobbler*. *See, e.g., Malibu Media, LLC v. Causa*, No. 1:19-CV-963 (NAM/ML), 2020 U.S. Dist. LEXIS 164268, at *9 (N.D.N.Y. Sep. 9, 2020) (Denying motion for default judgment based upon *Cobbler*).

Thirdly, Petitioners respectfully assert that the reasoning of Judge Murphy's dissent in *In re Charter* pointing out that the "or" in § 512(c)(3)(A)(iii) shows that §512(h) subpoenas to conduit service providers are valid is more persuasive:

> The majority's reading of [§ 512(c)(3)(A)(iii)] ignores the use of the disjunctive form in describing the infringing material (the subsection also contains a second use of the disjunctive form to distinguish "to be removed or … to be disabled")…
> The copyrighted material stored on an ISP's network becomes the subject of infringing activity when it is unlawfully duplicated by subscribers. In order to remove such material or disable access to it, a storage ISP needs it to be identified. On the other hand, when a subscriber transfers copyrighted material through a conduit ISP, that service provider cannot remove the material from the network. It can, however, provide identifying information about the offeror of the material "claimed to be infringing.

*In re Charter*, 393 F.3d at 781 (8th Cir. 2005).

By properly considering the "or", §512(c)(3)(A)(iii) is read as requiring conduit providers to provide identifying information for the offeror of the material claimed to be infringing. Petitioners urge the Court to adopt Judge Murphy's conclusion.

8

Fourthly, technology has changed significantly in the two decades since *Verizon* and *In re Charter*. Broadband adoption has increased remarkably.[7] Service providers offer services that were not even conceived of at the time of *Verizon* such as public WiFi based upon placing routers in homes of private users. *See* Ex "1". Some service providers engage in "deep packet inspection" to inspect packets in transit to users to protect their networks or even generate advertisements based upon user data consumption.[8] Service providers can use null routing to disable access to ongoing activity. *Supra*. The P2P application in *Verizon* was not BitTorrent but the defunct app "KaZaA". *Verizon*, 351 F.3d at 1229. It was an error for the F&R to simply conclude that the technology at issue had stayed the same since 2003.

**D.  The Petitioners object procedurally to the F&R's conclusions based upon documents outside the briefings that the subpoena was invalid.**

Neither Doe nor Cox argued that the subpoena was invalid. The F&R attempts to frame the issue of the validity of the subpoena as a type of subject matter jurisdictional inquiry it was obligated to undertake *sua sponte* by stating, "When analyzing motions to quash 512(h) subpoenas, courts first address the validity of the subpoena." F&R at p.5. Neither of the unpublished cases cited in the F&R support

---

[7] *See* Pew Research Center, April 7, 2021, https://www.pewresearch.org/internet/fact-sheet/internet-broadband/ (adult broadband adoption increased from 29 percent to over 80 percent since 2003 – the year of *Verizon* decision).
[8] *See* Alex Wawro, "What is Deep Packet Inspection", PCWorld, Feb. 1, 2012, https://www.pcworld.com/article/474095/what_is_deep_packet_inspection_.html [last accessed on Sept. 10, 2023].

this proposition.  In *In re DMCA Subpoena to eBay, Inc.*, 2015 WL 3555270, at *2 (S.D. Cal. June 5, 2015), the subpoenaed party eBay – not the Court – first argued that the subpoena was invalid.  The 512(h) subpoena issue in *Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm Identified*, No. 4:12-cv-00963, 2012 U.S. Dist. LEXIS 137272, at *3 (S.D. Tex. Sep. 24, 2012) was decided on the copyright owner Plaintiff's motion for the subpoena rather than an objection to a subpoena.  Accordingly, the Magistrate Judge should have limited the inquiry to the arguments raised by Doe.  Or at least invited Petitioners to submit a supplemental brief on this issue before concluding that Cox is a mere conduit from materials outside the adversary process.  *See Wood v. Milyard*, 566 U.S. 463, 472, 132 S. Ct. 1826, 1833 (2012) ("a federal court does not have carte blanche to depart from the principle of party presentation basic to our adversary system").  This F&R's incorrect technical conclusions illustrate the wisdom of *Wood*.

### E.  Petitioners Object to the F&R's Recommendation that they be ordered to destroy any information received in response to the subpoena.

Cox did not file an opposition to the subpoena. Doe was the only subscriber that objected.  Except Doe's identification, Cox responded to the subpoena on June 27, 2023.  Petitioners have since received invaluable responsive information from subscribers such as a piracy website used to pirate Petitioners' Works.  The F&R would order Petitioners forget this website although no one sought such extreme

relief. In *In re Charter* and *Verizon* this extreme relief was granted because it was sought by the respective ISPs. Petitioners urge the Court to decline to use this sledgehammer and merely order Cox to not disclose Doe's name should it agree with Doe's objection. *See In re Subpoena Issued Pursuant to the Dig. Millennium Copyright Act To: 43SB.COM.LLC*, No. MS07-6236-EJL, 2007 U.S. Dist. LEXIS 90342 (D. Idaho Dec. 7, 2007)(Partially quashing DMCA subpoena to one individual).

## IV.  CONCLUSION

As discussed above, the F&R's conclusion based upon papers outside the adversary process and without consideration of the applicability of §512(d) that the subpoena was invalid was an error. Petitioners respectfully request that the Court sustain their objections, reject the F&R and overrule Doe's objection to the subpoena. Alternatively, Petitioners request that the Court only partially quash the subpoena with respect to Doe's identification information.

DATED: Kailua-Kona, Hawaii, September 11, 2023.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Petitioners