CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena | Case No.: 1:23-cv-00426-JMS-WRP (Copyright) |
| Internet subscribers of Cox Communications, LLC and CoxCom LLC | MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR RECONSIDERATION |

## MEMORANDUM IN SUPPORT OF PETITIONERS' MOTION FOR RECONSIDERATION

Petitioners Voltage Holdings, LLC; Millennium Funding, Inc.; and Capstone Studios Corp., by and through their attorney, Kerry S. Culpepper, move this honorable court for Reconsideration of the ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION [Doc. #31] ("Order").  Petitioners respectfully assert

1

that the underpinnings of the Court's conclusion that the information location tools
(17 U.S.C. 512(d)) section is not applicable to IP addresses are incorrect technically
and legally.  The Court's conclusion that null routing an IP address is the same as
disabling access to a subscriber's account or terminating the account is technically
incorrect.  Further, in its analysis, the Court applied the notification language of 17
U.S.C. 512(c)(3)(A)(iii) directed to disabling access to the material rather than the
correct notification language of 512(d)(3) directed to disabling *links* to the material.
And the Court failed to acknowledge other means on the record that ISPs such as
Cox have for disabling access to the material (or link to the material) that is claimed
to be infringing or to be the subject of infringing activity such as port blocking and
filtering.  Petitioners respectfully assert that these errors amount to manifest errors
of fact and law that justify the Court reconsidering the Order.

## I.    STANDARD OF REVIEW

Fed. R. Civ. P. 59(e) permits a District Court to reconsider and amend a
previous order. The Rule, however, offers an "extraordinary remedy, to be used
sparingly in the interests of finality and conservation of judicial resources." *Carroll
v. Nakatani*, 342 F.3d 34, 945 (9th Cir. 2003) (citation omitted).   Pursuant to Fed.
R. Civ. P. 60(b)(1), (6), a court may relieve a party from a final judgment or order
due to, inter alia, mistake, or any other reason that justifies relief.   The standards for
reconsideration under Fed. R. Civ. P. 59(e) and 60(b) are substantially the same. *See*

*United Nat'l Ins. Co. v. Spectrum Worldwide, Inc*., 555 F.3d 772, 780 (9th Cir. 2009) (listing grounds for relief under both rules); *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262–63 (9th Cir. 1993); *Wharf v. Burlington N. R.R.*, 60 F.3d 631, 637 (9th Cir. 1995).

Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence not previously available; and (3) the need to correct clear or manifest error in law or fact in order to prevent manifest injustice. *See Mustafa v. Clark County School District*, 157 F.3d 1169, 1178-79 (9th Cir.1998); *Great Hawaiian Financial Corp. v. Aiu*, 116 F.R.D. 612, 616 (D. Hawai'i 1987), rev'd on other grounds, 863 F.2d 617 (9th Cir. 1988). A successful motion for reconsideration must demonstrate a reason why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature that induces the court to reverse its prior decision. *See White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006).

## II.    <u>REASONS FOR RECONSIDERATION</u>

*A.  Null routing an IP address is not the same as terminating an account.*

The Court describes null routing as "terminating the user's connection, which is a harsher remedy than the DMCA authorizes" and compared terminating a user's connection to the account termination provision of §512(j)(1)(A)(ii). Order at PageID.169. Null routing an IP address may terminate a connection to infringing

BitTorrent activity, but it is not equivalent to account termination or Internet termination per §512(j)(1)(A)(ii).  Firstly, if an account has more than one IP address, the user will still be able to use the other IP addresses for full Internet access, although the null routed IP address from which BitTorrent activity was broadcast as making pirated copies available to be shared will be limited based upon the type of null routing as discussed below.  *See* Decl. of David Cox at ¶13.

Secondly, null routing will not even terminate the Internet connection even when the account only has a single IP address.  For example, if an IP address of an account is *source* null routed, the user is placed in a soft walled garden where access is limited to certain websites, usually a website of the service provider informing the user to call a certain number to resume full service.  *See id.* This appears to be one of the approaches used by Cox.  *See BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634, 641 (E.D. Va. 2015) (describing how Cox places accounts in a "soft-walled garden" after certain number of notices where the account is limited to a single website where user can click a link to resume service and later to a "hard-walled garden" where the user must call Cox to resume service).  Secondly, if an IP address of a user's account is *destination* null routed, the user's service will still be able to use the Internet to access data, but other peers that are Cox accounts will not be able to link to the user's IP address to obtain copies of the pirated content.  *See* Cox Decl. at ¶13.  Thus, source null routing cuts the link at the source, while

destination null routing cuts the link at the destination.  Although source null routing is more limiting than destination routing, neither type of null routing terminates an account as argued in the Order.

B. *The Court relied on the wrong statutory notification language.*

The Order discusses whether the list of IP addresses "could constitute adequate notice under Subsection (c)(3)(A) for infringement under § 512(d)"[1] or whether Cox may remove or disable access to infringing in the context of §512(d). Order at PageIDs 166 and 169. However, §512(d)(3) provides that the Notification for §512(d) is for the service provider to remove or disable access to *the reference or link* – not the infringing material or activity.  Below Petitioners have put the §(c)(3)(A)(iii) language side by side with the §512(d)(3) language to clearly illustrate this point.

| (3)(A)(iii) language: | (d)(3) language: |
| --- | --- |
| (iii)Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material. | identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link. |

---

[1] The notification was not the list of the IP addresses at PageIDs9-16 as stated in the Opinion.  Rather, a representative copy of the notification is shown as Ex. "2" to the application.  *See* PageID.17.

Petitioners' assertion is consistent with the Congressional Record.  *See* H.R. Rep

No. 105-551, pt. 2, at 58 (1998) ("…responds expeditiously to remove or disable the

*reference or link* upon receiving a notification of claimed infringement as described

in new subsection…the information submitted by the complaining party…is the

identification of the reference or link to infringing material or activity…and the

information reasonably sufficient to permit the service provider to locate that

*reference or link*.") (emphasis added).

In view of this point, the Court's concern that "Cox has no meaningful ability

to satisfy the remedial requirements of the § 512(d) safe harbor short of terminating

the user's connection" evaporates.  Order at PageID18.  In response to the

notifications, Cox can put the IP addresses in the notice in the walled garden as it

already does or block the BitTorrent ports or filter BitTorrent activity as it already

at least does port blocking and filtering generally as noted in the opinion to remove

or disable the link to the infringing material or activity.

C.  *The record discusses other means such as port blocking and filtering that can
block access to infringing material or activity.*

The Order treats null routing as the only possible means set forth for removing

access to infringing activity or material or the link thereto.  However, Petitioners

also argued that Cox can block ports and filter out material.  Although the Court

disagreed with Petitioners that filtering or blocking ports modifies material, *see*

Order at PageID172, these are still means an ISP such as Cox have at its disposal for removing access to the infringing material. *See* Decl. of Cox at ¶¶14-17 (noting various types of port blocking and filtering a service provider can use to block access to infringing material via BitTorrent).

### D.  *Failure to qualify for the safe harbor does not equal liability.*

The Court's opinion states that "If the assignment of IP addresses to P2P infringers falls under § 512(d), Cox would have no ability to avoid liability for monetary relief for P2P infringement in suits like Petitioners' because although "notice" by copyright holders would be possible, "take down" by Cox would not." Order at PageID169-170.  Firstly, Petitioners are not suing Cox.  Rather, Cox responded to the subpoena without objection[2].  Secondly, as discussed above, Cox can use source null routing to place the IP address in a walled garden, destination null routing so that other Cox peers cannot obtained pieces of the pirated copy from the IP address, block BitTorrent ports, or filter BitTorrent activity in response to the notices to comply with the take down.  Importantly, Cox already engages in some of these practical measures in some cases.  But more importantly, Petitioners respectfully assert that the predicate for the assertion that Cox would be liable if it could not take down is incorrect. § 512(l) states that even the failure to qualify for a

---

[2] Because Petitioners withdrew their request for John Doe's information, *see* Ex. "C", Cox no longer has any role in this subpoena dispute (to the extent any dispute remains).

safe harbor "shall not bear adversely…any other defense." *See also Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1174 (C.D. Cal. 2002). Accordingly, ISPs such as Cox still maintain all their defenses and are not automatically liable if they fail to qualify for any of the safe harbors.

E.   *The separate safe harbors §§ 512(a) and (d) must be evaluated independently.*

The Order states that "If an ISP assigning an IP address is both "providing connections for" infringement under (a) and "referring or linking" to infringing material under (d)—as Petitioners contend—Congress would not have created two separate safe harbors." Order at PageID168.  But § 512(n) states, "whether a service provider qualifies for the limitation on liability in any one of those subsections shall be based solely on the criteria in that subsection, and shall not affect a determination of whether that service provider qualifies for the limitations on liability under any other such subsection."  Accordingly, per § 512(n) a service provider can indeed qualify for two overlapping safe harbors.

F.   *The language in the information tools subsection is unambiguous.*

The Order considered the Congressional record and the unpublished case of *A&M Recs., Inc. v. Napster, Inc.*, 2000 WL 573136, at *5 (N.D. Cal. May 12, 2000) in defining referring or linking as "providing some degree of "active assistance" to users in locating online resources".[3]  Order at PageID167, FN6.   However, the

---

[3] The Court's conclusion that linking or referring requires active assistance contradicts conclusions in *Totally Her*

meaning of referring or linking is clear.[4]  Accordingly, the Order should not have referred to Congressional records to interpret the clear terms referring or linking. Just a week ago, the Ninth Circuit noted in reversing an admiralty decision of this Court that "Because the meaning of the statute is clear from its text, the district court's review of the legislative history was unnecessary and improper." *Ehart v. Lahaina Divers, Inc.*, __ F.4th __, No. 22-16149, 2024 U.S. App. LEXIS 2974, at *16 n.13 (9th Cir. Feb. 8, 2024) (quoting *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017)).  Similarly, here the Order's review of legislative history of these clear terms was unnecessary and improper.

## III.   CONCLUSION

The Court's conclusion that § 512(d) information tool section rested for the most part on incorrect conclusions that: (i) null routing an IP address is equivalent to terminating service; (ii) ISPs such as Cox do not have other practical measures such as port blocking or filtering to stop access to infringing content via BitTorrent; and (iii) the notification required Cox have the ability to remove or disable access to the infringing material.  However, as discussed above, (i) null routing does not terminate the Internet service at the account and Cox already uses source null

---

*Media, LLC v. Bwp Media United States, Inc.*, No. CV 13-08379-AB (PLAx), 2015 U.S. Dist. LEXIS 193685, at *32-33 (C.D. Cal. Mar. 24, 2015) that user generated links to third-party websites displaying infringing photographs are information location tools and in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1116 (9th Cir. 2007) that hyperlinks provided by CCBill to a website "could be viewed as an "information location tool"".
[4] Besides Petitioners citation to the dictionary definitions in their Reply Brief, *see* PageID.127, the declaration of David Cox includes a diagram of the structures of the different tiers and interconnection of the Internet.  *See* Decl. of Cox at ¶¶26-32; Ex. "B".

routing; (ii) Cox has available other practical measures such as port blocking or filtering to stop access to infringing content via BitTorrent; and (iii) the § 512(d) notification  required Cox have the ability to remove or disable access to the *reference or the link* to the infringing material or activity rather than disabling or removing the infringing material.  Accordingly, Petitioners respectfully request that the Court Reconsider the Order to the extent it relied on the above technical and legal errors that amount to manifest injustice.

DATED: Kailua-Kona, Hawaii, Feb. 12, 2014.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Petitioners