...

COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                              7520-0
   jcox@cfhawaii.com
ABIGAIL M. HOLDEN                      8793-0
   aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone: (808) 585-9440
Facsimile: (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX (*pro hac vice*)
   JGolinveaux@winston.com
THOMAS J. KEARNEY (*pro hac vice*)
   TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000

Attorneys for COXCOM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC | CASE NO.: 1:23-cv-00426-JMS-WRP<br><br>COXCOM LLC'S RESPONSE TO PETITIONER'S MOTION FOR STAY PENDING APPEAL, PURSUANT TO COURT ORDER [DKT. NO. 33]; CERTIFICATE OF SERVICE<br><br>Honorable J. Michael Seabright |

## **TABLE OF CONTENTS**

                                                                                                                               **Page(s)**

I.    Procedural Background ...............................................................................................1

II.   Cox's Response to the Motion for Stay.............................................................3

       1.  Petitioners are not likely to succeed on the merits of their planned appeal ..................................................................................................... 3

       2.  Petitioners will not be irreparably injured absent a stay ............................. 7

       3.  Issuance of the stay may impact or injure the other parties interested in the proceeding..................................................................................... 10

       4.  The public interest factor is neutral on whether to issue a stay ................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABS-CBN Corp., et al. v. ABSCBNPINOY.COM, et al.*,
  Case No. 0:19-cv-62693-BB (S.D. Fla. Oct. 29, 2019)......................................11

*In re Ahern Rentals, Inc.*,
  2013 WL 273403 (D. Nev. Jan. 23, 2013) ............................................................4

*Bodyguard Prods., Inc. et al. v. RCN Telecom Services, LLC et al.*,
  Case No. 3:21-cv-15310-RK-TJB (D.N.J. 8/13/2021).........................................9

*Cobbler Nevada, LLC v. Gonzales*,
  901 F. 3d 1142 (9th Cir. 2018) ............................................................................8

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ...............................................................................7

*Malibu Media, LLC v. Causa*,
  Case No. 1:19-CV-963 (NAM/ML), 2020 WL 5408994 (N.D.N.Y.
  Sept. 9, 2020) ...................................................................................................8, 9

*Martin v. LCMC Health Holdings, Inc.*,
  2023 WL 5173791 (E.D. La. Aug. 11, 2023).......................................................4

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. March 30, 2023)...................................................7

*Millennium Funding, Inc. et al. v. Sharktech, Inc. et al.*,
  Case No. 1:21-cv-01261-NYW-SKC (D. Colo. May 7, 2021) ...........................9

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005).............................................................................................6

*Ron Goldman v. The Pirate Bay, et al.,*
  Case No. 2:07-cv-07767-CAS-VBK (C.D. Cal. Nov. 29, 2009) .......................11

*Tenn. Ex rel. Slatery v. Tenn. Valley Auth.*,
  2018 WL 3092942 (M.D. Tenn. June 22, 2018) ..................................................5

*United States v. Alisal Water Corp.*,
   326 F. Supp. 1032 (N.D. Cal. 2004) ...................................................................... 4

*Withrow v. Halsey*,
   655 F.3d 1032 (9th Cir. 2011) ............................................................................... 5

**Statutes**

17 U.S.C. § 512(a) ................................................................................................ 4, 6, 7

17 U.S.C. § 512(d) ...................................................................................................... 3, 5

17 U.S.C. § 512(h) ................................................................................................ 1, 5, 6, 8

17 U.S.C. § 512(k)(1) ...................................................................................................... 6

**COXCOM LLC'S RESPONSE TO PETITIONER'S MOTION FOR STAY PENDING APPEAL, PURSUANT TO COURT ORDER [DKT. NO. 33]**

Pursuant to the Court's February 1, 2024 Order, Dkt. No. 33, CoxCom LLC ("Cox") responds to Petitioners' Motion for Stay Pending Appeal as follows.

## I.      PROCEDURAL BACKGROUND

Petitioners sought and obtained issuance of a Subpoena pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(h), purporting to require Cox Communications, LLC [*sic*][1] and CoxCom LLC to provide personally identifying information about certain Cox subscribers identified by their internet protocol addresses ("IP addresses"). Dkt. No. 1 ("Application for 512(h) Subpoena"), Dkt. No. 3 (issued Subpoena). Subsequently, one of the subscribers submitted a letter to the Court asking to have the Subpoena "quashed or dismissed and … objecting to having [their] personal information released." Dkt. No. 4. The Court, construing the letter as a Motion to Quash, directed Petitioners to file a response. Dkt. No. 5; *see* Dkt. No. 6 (Petitioners' Memorandum in Opposition to Motion to Quash).

The Magistrate Judge subsequently filed Findings and Recommendations. Dkt. No. 8 ("F&R") at 1-2 n.1. After surveying case law and authorities, the Magistrate Judge found "that 512(h) subpoenas are not available to serve on ISPs

---

[1] As explained previously, Cox Communications, LLC is not an entity within the Cox family and appears to have been erroneously named in this matter. *See* Dkt. No. 18, fn. 1.

acting as conduits for P2P file sharing infringement," and found and recommended that the Subpoena "be QUASHED and that Petitioners be ordered return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained [from] the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena." *Id.* at 10, 16.

Petitioners filed objections to the F&R (Dkt. Nos. 10, 10-1), and Cox filed a response to correct certain misrepresentations (Dkt. No. 18). Following additional Court-ordered briefing, the Court issued an Order on January 30, 2024 overruling Petitioners' objections; adopting the F&R; and ordering Petitioners, "[n]o later than one week after the date of this Order … to return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained [from] the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena." Dkt. No. 31 (the "Order") at 22. The next day, Petitioners filed an "Urgent Motion for Stay Pending Appeal," seeking a stay of "the portion of the Order requiring [Petitioners] 'to return and/or destroy any information derived from the Subpoena, [and] to maintain no further record of the information obtained the Subpoena' … pending appeal." Dkt. No. 33 (the "Motion"). Petitioners asked the Court to let their attorney "continue to maintain information received and derived from the Subpoena, but … not use said information." Dkt. No. 32-2 (Declaration of Petitioners' counsel Kerry Culpepper).

2

On February 1, 2024, the Court issued an order: (a) temporarily suspending the requirements for Petitioners "to return and/or destroy any information" and "to maintain no further record of the information"; (b) directing Cox to file a Response to Petitioners' Motion; (c) requiring Petitioners to "ma[k]e no further use of the subscriber data" while the Court decides the Motion; and (d) directing Petitioners "to file a Statement as to whether (and if so, how) the subpoenaed information has been used, to include whether other litigation has been filed in other districts." Dkt. No. 33.

## II.   COX'S RESPONSE TO THE MOTION FOR STAY

Cox writes to address Petitioners' legally and factually unsupported arguments and to correct the record, as well as to provide information relevant to the Court's consideration of whether to issue a limited stay. Among other infirmities, Petitioners fail to show a likelihood of success on the merits, and Petitioners do not and cannot show that they will irreparably injured (or injured at all) absent a stay because Cox will preserve the information at issue during the pendency of an appeal.

### 1.   **Petitioners are not likely to succeed on the merits of their planned appeal**

Petitioners' argument that they have a "strong likelihood" of success on the merits of their planned appeal lacks a legal or factual basis. ***First***, Petitioners argue that two issues they apparently plan to raise on appeal—"whether an Internet Protocol ('IP') address … is an information location tool as provided in 17 U.S.C.

3

§512(d)," and "whether a service provider that provides IP addresses and modems to subscribers is merely a conduit per 17 U.S.C. § 512(a)"—are "question[s] of first impression." Mot. at 3-4. **Second**, Petitioners declare that they "disagree with technical conclusions made in the Order such as equating null-routing an IP address with disabling access to an infringers' account or failing to recognize that blocking certain ports, among other means, would remove or disable access to infringing material." Mot. at 4. Neither of these arguments demonstrates a likelihood of success on the merits.

Courts generally find the "issue of first impression" argument insufficient to demonstrate a likelihood of success in deciding whether to issue a stay. *See, e.g.*, *United States v. Alisal Water Corp.*, 326 F. Supp. 1032, 1039 (N.D. Cal. 2004) (rejecting argument that the fact that the Court's ruling was a matter of first impression, without demonstrating a probability of success, was sufficient to carry the defendants' burden to justify a stay, particularly where "Defendants … relied on their previous arguments on the merits, [and] the Court finds such arguments no more persuasive now than it has in the past"); *In re Ahern Rentals, Inc.*, 2013 WL 273403, *2 (D. Nev. Jan. 23, 2013) (finding that "this argument [of 'first impression'] supports *denying* [a stay] motion because, as it is an issue of first impression for the court, [the party seeking a stay] has failed to make a showing that the Ninth Circuit is likely to agree with its interpretation of the [law]") (emphasis

4

added); *Martin v. LCMC Health Holdings, Inc.*, 2023 WL 5173791, *4-5 (E.D. La. Aug. 11, 2023) (noting that "courts have frequently held the mere fact an issue is one of first impression is insufficient to demonstrate a party has a likelihood of success on the merits," collecting cases, and finding a stay "not warranted"); *Tenn. Ex rel. Slatery v. Tenn. Valley Auth.*, 2018 WL 3092942, *5 n.11 (M.D. Tenn. June 22, 2018) (finding an "issues of first impression" argument is not the appropriate legal standard for likelihood of success on the merits, because, if it were, "the number of stayed cases would be astounding"). For similar reasons, the mere fact that Petitioners "disagree with technical conclusions made in the Order" also does not show a likelihood of success on the merits under the Ninth Circuit's "clearly erroneous" standard for review of a district court's factual findings. *Withrow v. Halsey*, 655 F.3d 1032, 1035 (9th Cir. 2011) (citing *Silver v. Exec. Car Leasing Long–Term Disability Plan*, 466 F.3d 727, 732–33 (9th Cir. 2006)).

Furthermore, Petitioners' claim that these are issues of "first impression" is overstated. Indeed, as this Court recognized in its Order, Petitioners' theory that "an Internet Protocol ('IP') address … is an information location tool as provided in 17 U.S.C. §512(d)" is inconsistent with multiple district court decisions within the Ninth Circuit and the legislative history of the DMCA, and in addition makes no logical sense in light of the DMCA's structure. *See* Order at *16-18 & n.6, 7. And Petitioners' speculation that an internet service provider *might* fall outside the

5

§ 512(a)[2] safe harbor *if* it "provides IP addresses and modems to subscribers" is meritless on its face:[3] as courts have long recognized, the very purpose of a modem is to enable the "transmitting, routing, or providing connections for, material through a system or network," thus putting this service squarely within the § 512(a) safe harbor. *Compare*, *e.g.*, *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 975 (2005) ("Cable modem service *transmits data* between the Internet and users' computers…") (emphasis added) *with* 17 U.S.C. § 512(a) (safe harbor applies where a plaintiff alleges "infringement of copyright by reason of the provider's *transmitting, routing, or providing connections* for, material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections," as long as the service provider meets certain conditions) (emphasis added); 17 U.S.C. § 512(k)(1) (defining a "service provider" for purposes of § 512(a) as "an entity offering the *transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without

---

[2] While Petitioners use the shorthand term "conduit" in characterizing the scope of the § 512(a) safe harbor, the term appears nowhere in the DMCA and should not be interpreted to imply some limitation on the scope of the safe harbor that the statutory language does not support.

[3] Whether an ISP provides modems to its customers in some cases, as Petitioners speculate, is irrelevant for the reasons stated here.

6

modification to the content of the material as sent or received") (emphasis added); *see also, e.g.*, *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, *16 n.12 (E.D. Cal. March 30, 2023) ("myriad legal authority demonstrates there are numerous ways to *transmit communications via the internet*, such as by cable modem service …") (emphasis added). There is also no dispute here that Cox's ISP service satisfies the conditions for § 512(a) safe harbor. *See* Dkt. No. 29 (Declaration in Response to Order Requesting Supplemental Evidence). In short, Petitioners' Motion fails to demonstrate a likelihood of success on the merits.

### 2. Petitioners will not be irreparably injured absent a stay

Petitioners' argument that they will be "irreparably injured absent a stay" also does not support a stay for two independent reasons.[4]

***First***, as the Court has repeatedly pointed out, nothing prevents Petitioners from pursuing "alternative avenues to seeking Doe's identity including a 'John Doe' lawsuit… Petitioners could file the John Doe suit together with a motion for third-party discovery to identify an otherwise anonymous John Doe defendant." Dkt. No. 8 at 14 n.3; *see* Order at 19 (same). Although Petitioners' Motion simply ignores this, there is no reasonable dispute that following this procedure would put

---

[4] As the Ninth Circuit has explained, "a proper showing regarding irreparable harm … [is] a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("even certainty of irreparable harm has never *entitled* one to a stay") (emphasis added) (citing *Nken v. Holder*, 556 U.S. 418 (2009)).

Petitioners in exactly the same position as a § 512(h) subpoena with respect to identification of any alleged infringers.

While Petitioners previously argued that the Ninth Circuit's *Cobbler Nevada* decision precludes them from bringing such a John Doe lawsuit, nothing in that decision supports their argument. *See* Dkt. No. 10-1 at pp. 7-8 (citing *Cobbler Nevada, LLC v. Gonzales*, 901 F. 3d 1142 (9th Cir. 2018)); Dkt. No. 24 at 7-8 (same). Indeed, to the extent the decision has any relevance here, it contradicts Petitioners' argument. *Cobbler Nevada* upheld a district court's dismissal of direct and indirect copyright claims, where dismissal had occurred *only after* the plaintiff had: (a) "filed suit against the unknown holder of the IP address"; (b) "subpoenaed [records] from Comcast" that identified the relevant subscriber; (c) conducted an investigation and determined that the subscriber was *not* "the likely infringer"; (d) deposed the subscriber with leave of court in an attempt to develop "information regarding the identity of the actual infringer"; and (e) filed an amended complaint that lacked any new facts. *Cobbler Nevada*, 901 F. 3d at 1145. Petitioners' other previously cited case, *Malibu Media, LLC v. Causa*, fails for the same reason. *See* Dkt. No. 10-1 at 8. There, the New York court had already "*granted* [the plaintiff's] motion to serve a third-party subpoena prior to a Rule 26(f) conference so it could identify the individual internet subscriber associated with the IP address cited in the initial complaint[,]" and the plaintiff had successfully identified the defendant. *See Malibu*

8

*Media, LLC v. Causa*, Case No. 1:19-CV-963 (NAM/ML), 2020 WL 5408994, at *1 (N.D.N.Y. Sept. 9, 2020) (emphasis added). *Causa* merely held that default judgment was not warranted because the plaintiff failed to present sufficient evidence of infringement *after* successfully identifying the allegedly infringing subscriber. Petitioners' speculation that they might ultimately be unable to develop evidence of actual copyright infringement against an *identified* subscriber is a separate, and here irrelevant, matter.

**Second**, Cox will preserve a copy of the information it provided to Petitioners in response to the Subpoena until such time as the appeal and any subsequent process is concluded. Should the Court deem it necessary, it can address any remaining concerns that Petitioners may have by ordering Cox to do so. This simple measure will maintain the status quo, ensure that the personally identifiable information of Cox's subscribers continues to be safeguarded pending the outcome of the appeal by reducing the number of parties potentially having access to the information,[5] and

---

[5] At least two of the three Petitioners (Voltage Holdings LLC and Millennium Funding Inc.) appear to have multiple subsidiary or related companies that frequently join in mass copyright litigations. *See, e.g.*, *Bodyguard Prods., Inc. et al. v. RCN Telecom Services, LLC et al.,* Case No. 3:21-cv-15310-RK-TJB (D.N.J. 8/13/2021) (30 plaintiffs including Petitioners Voltage Holdings LLC and Millennium Funding, Inc.); *Millennium Funding, Inc. et al. v. Sharktech, Inc. et al.,* Case No. 1:21-cv-01261-NYW-SKC (D. Colo. May 7, 2021) (26 plaintiffs including Petitioners Voltage Holdings LLC and Millennium Funding, Inc.). Examples could be multiplied.

obviate any concern that "Petitioners will not be able to receive [the subpoenaed information] again," which is the sole basis for their purported injury. To the extent Petitioners may have already disclosed this information to third parties—it appears they have already used it to extract settlements and coerce statements from some of the identified individuals, *see* Dkt. No. 34—enforcement of the Court's original order as written may have the salutary effect of ensuring that the Court's "make no further use" order unambiguously applies to such third parties, by requiring Petitioners to affirmatively "return and/or destroy any information *derived* [*from*] the Subpoena." Order at 22 (emphasis added).

### 3. Issuance of the stay may impact or injure the other parties interested in the proceeding

Cox takes no position on this prong of the inquiry other than to note that, at a minimum, the other Cox subscribers whose information was put at issue by the

---

Moreover, even putting aside relationships between Petitioners, their subsidiaries or related companies, and litigants in other cases, it is not even clear which entities are directly involved in *this* matter. The Application for 512(h) Subpoena in this matter purported to be brought on behalf of four entities, namely Voltage Holdings, LLC; Millennium Funding, Inc.; Screen Media Ventures, LLC; and Capstone Studios Corp. Dkt. No. 1. But confusingly, Petitioners' counsel did not identify Screen Media Ventures as a client, *id.* and it does not appear to be identified in any of Petitioners' subsequent filings. Finally, the only entity actually identified as a copyright owner of a work at issue in connection with Petitioners' Application is a non-party—neither a Petitioner, nor an Applicant, nor a named client of Petitioners' counsel—named Ever After Happy Productions Ltd. *See* Dkt. No. 1-1 (Declaration of Petitioners' counsel Kerry Culpepper), Dkt. Nos. 1-2 and 1-3 (Exhibits 1 and 2 to Declaration).

Subpoena should be deemed parties "interested in the proceeding," since they plainly have an interest in the disclosure or use (even if inadvertent) of their personally identifiable information.

    **4.    The public interest factor is neutral on whether to issue a stay**

As explained above, Petitioners' concern that the Court's Order will "prevent them from protecting the exclusive rights to their Works" is misplaced: Petitioners can seek to obtain the desired information by pursuing John Doe lawsuits and third party discovery, and in any event Cox will retain a copy of the information it provided in response to the Subpoena, which will be available to Petitioners if they prevail on their appeal. Finally, nothing in the Court's decision or order would appear to preclude Petitioners from investigating and bringing suit against so-called "piracy websites" in the meantime.[6]

---

[6] While it is unclear from the Motion, Petitioners appear to claim that they were "informed of at least one new piracy website where their Works were being pirated" as a consequence of reviewing information they received from the Subpoena. *See* Motion at 4; Dkt. No. 24 at 3 n.1 (describing "'watchmovierulz' and 'piratebay'" as "websites"). It is implausible that Petitioners and/or their counsel were unaware of The Pirate Bay or Movierulz websites before this, including since both websites have been the subject of copyright infringement lawsuits in the past. *See, e.g.*, *ABS-CBN Corp., et al v. ABSCBNPINOY.COM, et al.*, Case No. 0:19-cv-62693-BB (S.D. Fla. Oct. 29, 2019) (identifying movierulz.stream as a defendant); *Ron Goldman v. The Pirate Bay, et al.,* Case No. 2:07-cv-07767-CAS-VBK (C.D. Cal. Nov. 29, 2009. In any event, it is not clear why Petitioners believe the Court's Order would preclude them from investigating and, if warranted, suing those websites going forward.

DATED:  Honolulu, Hawaiʻi, February 15, 2024

*/s/ Joachim P. Cox*
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice*)
THOMAS J. KEARNEY (*pro hac vice*)

Attorneys for COXCOM LLC