COX FRICKE LLP
A LIMITED LIABILITY LAW PARTNERSHIP LLP
JOACHIM P. COX                    7520-0
   jcox@cfhawaii.com
ABIGAIL M. HOLDEN               8793-0
   aholden@cfhawaii.com
800 Bethel Street, Suite 600
Honolulu, Hawai'i 96813
Telephone: (808) 585-9440
Facsimile: (808) 275-3276

WINSTON & STRAWN LLP
JENNIFER A. GOLINVEAUX (*pro hac vice*)
   JGolinveaux@winston.com
THOMAS J. KEARNEY (*pro hac vice*)
   TKearney@winston.com
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000

Attorneys for COXCOM LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC, | CASE NO.: 1:23-cv-00426-JMS-WRP<br><br>COXCOM LLC'S RESPONSE TO PETITIONERS' MOTION FOR RECONSIDERATION [DKT. NO. 35]; CERTIFICATE OF SERVICE<br><br>Judge: Honorable J. Michael Seabright |

## **TABLE OF CONTENTS**

**Page(s)**

PROCEDURAL BACKGROUND ....................................................................... 3

LEGAL STANDARD ........................................................................................... 5

ARGUMENT.......................................................................................................... 6

    A.    Petitioners offer no basis for the court to revisit its key dispositive holdings. ..................................................................................................... 6

    B.    Petitioners' attacks on ancillary points in the Order are baseless and would not warrant reconsideration in any event. ........................ 11

CONCLUSION..................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*389 Orange St. Partners v. Arnold*,
   179 F.3d 656 (9th Cir. 1999) ............................................................................. 5

*Abordo v. Dept. of Public Safety*,
   2012 WL 5954998 (D. Haw. Nov. 28, 2012) ...................................... 5, 6, 10, 14

*Cabasug v. Crane Co.*,
   2014 WL 12887739 (D. Haw. Feb. 7, 2014) (Seabright, J.) ............................. 5

*Carroll v. Nakatani*,
   342 F.3d 934 (9th Cir. 2003) ......................................................................... 5, 6

*In re Charter Commcunications, Inc.*,
   393 F.3d 771 (8th Cir. 2005) .......................................................................... 1, 8

*Recording Industry Association of America, Inc. v. Verizon Internet Services, Inc.*,
   351 F.3d 1229 (D.C. Cir. 2003) ...................................................................... 1, 8

*U.S. for Use & Benefit of Familian Nw., Inc. v. RG & B Contractors, Inc.*,
   21 F.3d 952 (9th Cir. 1994) .............................................................................. 5

*Warren v. United States*,
   2021 WL 6500155 (D. Haw. Jun. 7, 2021) (Seabright, J.) ........................... 6, 12

**Statutes**

17 U.S.C. § 512(a) ................................................................................... *passim*

17 U.S.C. § 512(d) ................................................................................... *passim*

17 U.S.C. § 512(l) ............................................................................................ 15

**Other Authorities**

Fed. R. Civ. P. 59(e) .......................................................................................... 5

Fed. R. Civ. P. 60(b) .......................................................................................... 5

## COXCOM LLC'S RESPONSE TO PETITIONERS' MOTION FOR RECONSIDERATION [DKT. NO. 35]

Petitioners' motion for reconsideration (Dkt. No. 35) of the Court's order quashing their § 512(h) subpoena to Respondent CoxCom LLC[1] (Dkt. No. 31, the "Order") fails to justify the extraordinary remedy of reconsideration. There was no clear error—factual or legal—in the Court's Order, nor has there been any newly discovered evidence, and there is no basis for reconsideration.

The Order's dispositive holdings were that Cox's ISP services at issue did not fall under 17 U.S.C. § 512(d) because: (1) assigning users an IP address is not "referring or linking" to an online location containing infringing material; and (2) an IP address is not an "information location tool" under the meaning of the statute. Order at PageID.167-69 & nn. 6-7. These holdings alone required rejection of Petitioners' arguments, all of which relied on the untenable theory that Cox's assignment and provision of IP addresses made it a provider of "information location tools" within the meaning of § 512(d) (in addition to Cox's undisputed provision of "transitory digital network communications" under § 512(a)).[2] Yet Petitioners

---

[1] In addition to CoxCom, Petitioners also named Cox Communications, LLC. *See* Dkt. No. 1. As previously explained, though, Cox Communications, LLC is not an entity within the Cox family and appears to have been erroneously named. *See* Dkt. No. 18 n.1.

[2] Petitioners' motion for reconsideration does *not* challenge the Order's adoption of the reasoning and holdings in *Recording Industry Association of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229, 1234 (D.C. Cir. 2003) and *In re Charter Communications, Inc.*, 393 F.3d 771, 773 (8th Cir. 2005)

devote only two paragraphs at the end of their brief to these key holdings, and even then merely advance the same statutory-interpretation arguments that failed before. Dkt. No. 35-1 ("Br.") at PageID.207-08. Petitioners' arguments do not gain force through repetition. And, in any event, a motion for reconsideration is not a proper vehicle to reargue issues already briefed and decided.

Rather than focus on the Court's dispositive holdings, Petitioners focus their Motion for Reconsideration on secondary findings and side-notes from a single paragraph in the Court's Order—raising arguments about the technical effects of null routing; about whether the notification requirement in § 512(d) (which *expressly* incorporates the notice requirement "as described in subsection (c)(3)") is materially different from the requirement it references; about hypothetical technical means of blocking users' access to infringing material; and about the DMCA's implications for underlying copyright liability. Br. 3-8. These secondary attacks are not only meritless, but they are based on a newly filed declaration, which is improper in the context of a motion for reconsideration.[3] Nor could these arguments justify reconsideration: the Order's holdings that IP addresses are neither a "reference or

---

that a § 512(h) subpoena may not issue based on an ISP's activities as a so-called "conduit" under the § 512(a) safe harbor.

[3] Cox is concurrently filing a motion to strike this improper declaration.

2

link" nor an "information location tool" under § 512(d) (and they certainly are not *both*) would compel the same result notwithstanding.

## PROCEDURAL BACKGROUND

Petitioners issued a subpoena to Cox under § 512(h), seeking the identity of the assignees of certain IP addresses. *See* Dkt. No. 1. One of the assignees anonymously submitted a letter to the Court asking to have the subpoena "quashed or dismissed and … objecting to having [their] personal information released." Dkt. No. 4. Magistrate Judge Porter, construing that letter as a Motion to Quash, directed Petitioners to respond, which they did. Dkt. Nos. 5-6. Thereafter, Judge Porter filed Findings and Recommendations to grant the motion to quash. Dkt. No. 8 ("F&R"). The F&R concluded "that 512(h) subpoenas are not available to serve on ISPs acting as conduits for P2P file sharing infringement," and found and recommended:

> that the 512(h) Subpoena, ECF No. 3, be QUASHED and that Petitioners be ordered [to] return and/or destroy any information derived from the Subpoena, to maintain no further record of the information obtained [from] the Subpoena, and to make no further use of the subscriber data obtained from the Subpoena.

*Id.* at PageID.52, 58.

Petitioners objected to the F&R (Dkt. No. 10), and Cox filed a response to correct certain misrepresentations in Petitioners' objection (Dkt. No. 18). After additional Court-ordered briefing and the submission of supplemental evidence, the Court issued the Order, which overruled Petitioners' objections, adopted the F&R,

3

and ordered Petitioners to return or destroy the information they had received in response to the Subpoena. The Order concluded, among other things, that:

- IP addresses do not function as links or references for purposes of § 512(d). Rather, "while one BitTorrent user may download files from other users, all of whom happen to have IP addresses, the trackers and the client software accomplish the indexing, referencing, and linking functions necessary to locate and distribute files—the ISP is not involved." Order at PageID.167-68 & n.7.

- "IP addresses do not fit comfortably within § 512(d)'s description of an 'information location tool'" because an IP address "does not, in itself, constitute a 'directory, index, reference, pointer, or hypertext link.'" *Id.* at PageID.168-69.

- Petitioners' argument that Cox could "remove or disable access to" the infringing material "fails" because "Congress considered disabling access to infringing material and disabling access to a subscriber's account to be distinct remedies." *Id.* at PageID.169.

- Petitioners' arguments that the Court should disregard the Hall declaration and limit the remedy only to information as to the objecting Cox subscriber lacked merit. *Id.* at PageID.170-72.

Thirteen days later, Petitioners moved for reconsideration, accompanied by a newly-submitted declaration from purported expert David Cox, attaching two documents that have been publicly available for many years and opining on "types of null routing," the effects of such null routing on users' internet access, "port blocking approach[es]," URL filtering, other "conventional approaches for blocking BitTorrent traffic," the supposed "burden" on "ISPs such as Cox" to adopting these approaches, the nature of IP addresses and their interaction with BitTorrent systems, and the "structure of the different tiers of network providers of Internet service."

4

Dkt. Nos. 35-1 ("Br."), 35-2 ("Declaration"). In addition to filing this response to the Motion for Reconsideration, Cox has moved to strike the Declaration.

## LEGAL STANDARD

Motions for reconsideration are governed by Federal Rules of Civil Procedure 59(e) and 60(b). *See U.S. for Use & Benefit of Familian Nw., Inc. v. RG & B Contractors, Inc.*, 21 F.3d 952, 954 (9th Cir. 1994) (motions to reconsider brought under Rule 59(e) are construed as Rule 60(b) motions). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting Moore's Fed. Prac. § 59.30[4] (3d ed. 2000)). Motions for reconsideration "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Motions for reconsideration "should not be used to ask a court 'to rethink what the court [] already thought through, rightly or wrongly." *Abordo v. Dept. of Public Safety*, 2012 WL 5954998, at *1 (D. Haw. Nov. 28, 2012) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)); *Cabasug v. Crane Co.*, 2014 WL 12887739, at *1 (D. Haw. Feb. 7, 2014) (Seabright, J.) ("Mere disagreement with a previous order is an insufficient basis for

reconsideration . . . ."). Instead, arguments that the court erred as to issues it previously considered "should be directed to the court of appeals." *Abordo*, 2012 WL 595498, at *1 (citing *Sullivan v. Fara-RLS Grp.*, 795 F. Supp. 305, 309 (D. Ariz. 1992)). Indeed, under this Court's Local Rules, repeating previous arguments in a motion for reconsideration is sanctionable if not tied to a permissible basis for reconsideration. LR 60.1.

Motions for reconsideration also "may not be used to raise argument or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F. 3d at 945; *see also Warren v. United States*, 2021 WL 6500155, at *1 (D. Haw. Jun. 7, 2021) (Seabright, J.) ("[R]econsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.").

## ARGUMENT

### A. Petitioners offer no basis for the court to revisit its key dispositive holdings.

The Court's Order agreed with the D.C. Circuit's and Eighth Circuit's holdings (and the F&R) that a § 512(h) subpoena cannot issue based on an ISP acting as a "conduit for allegedly infringing activity" under the § 512(a) safe harbor. Order at PageID.161-62 (citing *Verizon*, 351 F.3d at 1233; *In re Charter*, 393 F.3d at 777); *see also id.* at PageID.164. Petitioners' motion for reconsideration does not challenge this holding. Thus, the only relevant issue is whether Cox, in addition to

6

acting as conduit under § 512(a), and as Petitioners have previously argued, "*also falls under § 512(d)*" by "assigning IP addresses to P2P infringers." *See id.* at PageID.165 (emphasis in original).

As the Order explained, for Petitioners' interpretation of § 512(d) to prevail, users' IP addresses must be "refer[ring] or link[ing]," *id.*, and those IP addresses must constitute "*both* 'information location tool[s]' *and* 'online location[s] containing infringing material.'" *Id.* (quoting Dkt. No. 24 at PageID.125-26)) (emphasis and alterations in the Order); *see also* § 512(d) (referring to "infringement of copyright by reason of the provider *referring or linking* users to an *online location containing infringing material* or infringing activity, *by using information location tools*, including a directory, index, reference, pointer, or hypertext link" (emphasis added)).

The Order's analysis thus began with the requirements of § 512(d)—and it held they were not met.

First, the Order noted that IP addresses do not "necessarily function as links or references in P2P filesharing" and that, instead, "it is the P2P system that enables users to locate peers who are also seeking to distribute or receive files." Order at PageID.167. It explained that "while one BitTorrent user may download files from other users, all of whom happen to have IP addresses, the trackers and the client software accomplish the indexing, referencing, and linking functions necessary to

7

locate and distribute files—*the ISP is not involved.*" *Id.* at PageID.167-68 n.7 (emphasis added). And it concluded that it was far more fitting to describe the assignment of an IP address as "providing connections" under § 512(a) than as "referring or linking" under § 512(d). *Id.* at PageID.168. This alone was enough to reject Petitioners' argument—the Order confirmed that "referring or linking" is required for an ISP's activity to fall under § 512(d).[4]

Second, the Order concluded that "IP addresses do not fit comfortably within § 512(d)'s description of an 'information location tool.'" *Id.* The Court noted that the prototypical "information location tool" is a search engine. *Id.* at PageID.169 (citing *Capitol Recs., Inc. v. MP3tunes, LLC,* 821 F. Supp. 2d 627, 639 (S.D.N.Y. 2011)). And it correctly recognized that the assignment of IP addresses is not analogous to search-engine activity. *Id.*; *cf id.* at PageID.168 n.7 (noting that it is BitTorrent "trackers"—not IP addresses—"that help users seeking to download particular files locate peers who have those files available to distribute"). Again, this

---

[4] Notably, both the *Verizon* and *In re Charter* decisions rejecting the application of § 512(h) to internet service providers described the function of an IP address, but neither held that an ISP was, or could be, a § 512(d) information location provider. *Verizon*, 351 F.3d at 1232 ("[T]he ISP… can link the IP address used to access a P2P program with the name and address of a person – the ISP's customer – who can then be contacted or, if need be, sued by the [copyright plaintiff]."); *In re Charter*, 393 F.3d at 774 ("[T]he ISP… can link a particular IP address with an individual's name and physical address . . . .").

8

*alone* was sufficient to reject Petitioners' arguments, since § 512(d) applies to an ISP *only* if IP addresses are "information location tools."[5]

While these two dispositive holdings provide the basis for the Order's legal analysis, Petitioners confine their response to these holdings to the end of their reconsideration brief—providing only two short paragraphs of responsive argument, neither of which justify reconsideration and both of which only reiterate Petitioners' prior arguments.

***First***, Petitioners claim the Court erred in interpreting "referring or linking," which they claim are "clear" terms, taking issue with the Court's discussion (in a footnote) of Congressional history and caselaw supporting its interpretations. Br. 8-9. But the interpretation of "referring or linking" is *precisely* the question that was before the Court previously, and it was already briefed by Petitioners (who already argued that their interpretation was supported by dictionary definitions of the term "link"). Dkt. No. 10-1 at PageID.66, 68-70; Dkt. No. 24 at PageID.126-28. The Court already, and properly, rejected Petitioners' argument, and Petitioners'

---

[5] The Order did not separately analyze whether an IP address is an "online location containing infringing material or infringing activity." Doing so was unnecessary given that the Court determined that it did not meet other elements of § 512(d). But it bears noting that Petitioners could not have met that requirement either. *See* Dkt. No. 24 at PageID.126 (Petitioners conceding that the allegedly infringing files "reside on Cox's subscribers' computers.").

9

disagreement with that analysis cannot justify reconsideration. *Abordo*, 2012 WL 5954998, at *1-2.

*Second*, Petitioners challenge the Order's recognition that their proposed interpretation of "referring or linking" would render the language of § 512(a) superfluous, on the spurious basis that the statute requires the Court to independently assess whether a service provider qualifies for each safe harbor. Br. at PageID.207. But the Order *did* separately analyze § 512(a) and § 512(d). Order at PageID.159-62, 165-70. And it did not suggest that Cox's actions could never fall under § 512(d) simply because they fell under § 512(a). Instead, the Court *separately* interpreted § 512(d) using the well-established interpretive canon that courts "presume that Congress did not intend any part of [a] statute to be 'superfluous, void, or insignificant.'" Order at PageID.168 (quoting *GCIU-Emp. Ret. Fund v. MNG Enters.*, 51 F.4th 1092, 1097 (9th Cir. 2022)). That analysis made sense because, among other things, Petitioners' briefing *expressly* (though incorrectly) argued that the term "connect" (used in § 512(a)) is synonymous with the word "link" (used in § 512(d)). Dkt. No. 24 at PageID.126-27. The fact that the two safe harbors must be separately analyzed does not mean this Court was required to ignore the obvious point that Congress rarely uses two different terms to mean precisely the same thing. Petitioners' argument would necessarily render § 512(a) "superfluous, void, or insignificant," not just in Cox's case but in virtually *every* case involving an ISP—

10

the very entities that § 512(a) was designed to cover. Again, Petitioners' disagreement with the Court's analysis cannot justify reconsideration. Petitioners have failed to demonstrate that the Court made any clear error of law.

> **B.  Petitioners' attacks on ancillary points in the Order are baseless and would not warrant reconsideration in any event.**

Although the holdings discussed above are dispositive, Petitioners primarily focus on ancillary points in the Order—raising arguments about whether "null routing" is the same as account termination (Br. at PageID.202-04), the applicable statutory notification language (*id.* at PageID.204-05), the purported availability of other means of blocking P2P activity (*id.* at PageID.205-06), and whether their interpretation of § 512(d) would leave Cox without any defense in future copyright-infringement actions (*id.* at PageID.206-07). It is unclear why Petitioners spend most of their argument addressing points made in a single paragraph of the Order. *See* Order at PageID.169-70. Even if Petitioners had shown that the Court should reconsider these issues (which they have not), and even if they were right on the merits (and they are not), that would still not change the Court's finding that IP addresses do not qualify as "references or links" or "information location tools" as required under § 512(d).

Regardless, Petitioners have not made a showing that justifies reconsideration of any of these issues.

*First*, Petitioners' arguments about the effects of null routing and "other means such as port blocking and filtering that can block access to infringing material or activity" are based almost entirely on the improper, new Declaration they offer from David Cox. Br. at PageID.202-04 (repeatedly relying on Declaration ¶ 13), PageID.6-7 (relying on Declaration ¶¶ 14-17). This supplemental evidence cannot justify reconsideration because the Declaration is "evidence … that could have been presented at the time of the challenged decision." *Warren*, 2021 WL 6500155, at *1. Petitioners' prior briefing argued that this Court should consider "for example, null routing" as a method by which "Cox can disable access to infringing material." Dkt No. 10-1 at PageID.69-70 & nn. 5-6; *see also* Dkt. No. 24 at PageID.124. They offer no reason why they could not have proffered the Declaration with their initial Objections filed in September 2023. Petitioners' citationless assertion that they previously argued that "port blocking" and "filtering" are other ways to block access to infringing material (Br. at PageID.205) merely demonstrates that they *could* have made such arguments and offered supporting evidence earlier, but failed to do so.[6] Reconsideration is unwarranted.

---

[6] Petitioners' claim that they "argued" this point is misleading: their only "argument" was that Cox's purported ability to scan traffic to Cox email addresses "to filter out spam and malicious email" and its "blocking of botnets, viruses, phishing sites, malware, and certain ports," needed to be "reconcile[ed]" with a CoxCom declaration showing that "material is transmitted through [Cox's] system or network without modification of its content." Dkt. No. 30 at PageID.146-47. As the Court correctly noted, Petitioners' arguments were irrelevant to that point

12

Petitioners' arguments on these issues are baseless in any event. As to null routing, they wrongly claim the Court erred by describing null routing as "terminating the user's connection." Br. at PageID.202-03. Indeed, Petitioners' *own* briefing described null routing as "effectively terminating a network connection." Dkt. No. 10-1 at PageID.70 n.5. Despite this, Petitioners now attack a straw man, arguing that the Court erred in holding "that null routing an IP address is the same as disabling access to a subscriber's account or terminating the account." Br. at PageID.201. But—as Petitioners themselves immediately acknowledge—the Court made no such holding. Rather, it "describe[d] null routing as 'terminating the user's connection,'" and noted that this was "a harsher remedy than the DMCA authorizes." Br. at PageID.202 (quoting Order at PageID.169). And in any event, their attempt now to contrast "cut[ting] the link" (Br. at PageID.203-204) with "terminat[ing] an account" (Br. at PageID.204) is a distinction without a difference. Their own description of null routing is fully consistent with the Court's finding that "null routing effectively terminates a network connection."[7] In any event, whether via null

---

because those functions did not require "modification" of content, so they would not "remove Cox from the safe harbor in § 512(a)." Order at PageID.172. Notwithstanding, Petitioners could have—but did not—make their present arguments at that time.

[7] Petitioners also claim there is a separate kind of null routing—"destination null routing"—that only prevents "other peers that are Cox accounts [from connecting to] the user's IP address to obtain copies of the pirated content." Br. at PageID.203 (citing Declaration ¶ 13). Putting aside that Petitioners already made

13

routing, or Petitioners' newly proffered suggestion of filtering or port-blocking, these arguments go only to whether there are technical means to block access. That is relevant only *if* the provision of an IP address falls into § 512(d) in the first instance—and this Court already held that it does not.

*Second*, Petitioners' claim that the Court relied on the "wrong statutory notification language" is baseless. Petitioners fault the Court for its passing reference to "adequate notice under Subsection (c)(3)(A) for infringement under § 512(d)," claiming that § 512(d)(3) has different requirements for notice. Br. at PageID.204 (citing Order at PageID.166, 169). But the Court's reference was the correct one: § 512(d) itself refers to the notice requirement as a "notification of claimed infringement *as described in subsection (c)(3)* . . . ." § 512(d)(3) (emphasis added). It cannot have been error—much less clear error—for the Court to use the same terminology as the statute itself. And in any event, Petitioners' argument rests on a logical fallacy: § 512(d)(3)'s notice requirements are relevant *only if* the provision of IP addresses falls under § 512(d) in the first instance—which this Court has already held is not the case. Again, Petitioners' mere disagreement with that holding cannot warrant reconsideration. *Abordo*, 2012 WL 5954998, at *1-2.

---

this argument, which the Court considered and discounted, Petitioners ignore that this would *not* block access to infringing material because users of every other ISP in the country could still use P2P software to locate and connect with the user at issue.

***Finally***, Petitioners' argument that failure to qualify for the safe harbor is different from a finding of liability is misdirection. *See* Br. at PageID.206-07 (faulting the Court's observation that "[i]f the assignment of IP addresses to P2P infringers falls under § 512(d), Cox would have no ability to avoid liability for monetary relief for P2P infringement"). Again, Petitioners mischaracterize what the Court actually said: contrary to Petitioners' argument otherwise, the Court did <u>*not* say</u> that Cox "would be liable if it could not take down" allegedly infringing material. Rather, the Court accurately stated that mis-classifying ISPs as § 512(d) "information location tool" providers would render § 512(a) a dead letter, because ISPs "would have no ability to avoid liability *for monetary relief*" under the DMCA's safe harbors. Order at PageID.169 (emphasis added); *see* 17 U.S.C. § 512(a) (providing that "[a] service provider shall not be liable for monetary relief" under the specified conditions).[8] The Order merely recognized—and correctly so— that Petitioners' position would result in ISPs losing the ability to avoid liability for monetary relief *by virtue of the safe harbor*. Petitioners point to no authority that has ever adopted their position, nor have they demonstrated clear error as required to support reconsideration.

---

[8] As Petitioners concede, even if Cox did not qualify for a safe harbor, it would retain all available defenses to infringement claims. 17 U.S.C. § 512(l); *see* Br. at PageID 206-207.

15

## CONCLUSION

Petitioners offer no basis for the Court to reconsider its key, dispositive holdings that the IP addresses are not "references or links" or "information location tools." Petitioners' ancillary attacks on the Court's order are based on improper new evidence that cannot justify reconsideration and are wrong on the merits. There is no reason for the Court to reconsider the Order. Petitioners' motion for reconsideration should be denied, and the Court should strike Petitioners' improper new Declaration.

DATED:  Honolulu, Hawai'i, February 28, 2024

*/s/ Abigail M. Holden*
JOACHIM P. COX
ABIGAIL M. HOLDEN
JENNIFER A. GOLINVEAUX (*pro hac vice*)
THOMAS J. KEARNEY (*pro hac vice*)

Attorneys for
COXCOM LLC