CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Petitioners
Voltage Holdings, LLC
Millennium Funding, Inc., and
Capstone Studios Corp.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re Subpoena | **Case No.:** 1:23-cv-426-JMS-WRP (Copyright) |
| Internet subscribers of Cox Communications, LLC and CoxCom LLC | PETITIONERS' MEMORANDUM IN OPPOSITION TO COX'S MOTION TO STRIKE [DOC. #39]; EXHIBITS "1"-"5"; CERTIFICATE OF SERVICE |

**PETITIONERS' MEMORANDUM IN OPPOSITION TO COX'S MOTION
TO STRIKE [DOC. #39]**

Pursuant to L.R. 7.2, Petitioners Voltage Holdings, LLC, Millennium Funding, Inc., and Capstone Studios Corp ("Petitioners") submit their Memorandum in Opposition to Cox's Motion to Strike [Doc. #39]. Cox's motion to strike is nothing more than a thinly disguised sur-reply to ensure that it gets the last word.

## I.    INTRODUCTION

Petitioners are producers and/or controlling parties of popular movies *After Ever Happy*, *Fall,* and *The Protégé*. *After Ever Happy* is the fourth installment of Voltage's popular *After* franchise romantic drama film series.  *See* Ex. "1".  *Fall* is a thriller starring Caroline Currey and Virginia Gardner as two women who climb to the top of a 2,000-foot abandoned radio tower and become stranded at the top.  *See* Ex. "2".  *The Protégé* is an action thriller featuring A-list actors such as Samuel Jackson and Michael Keaton, among others.  *See* Exs. "3"-"4".  Financial resources, time and effort were invested in making and marketing these motion pictures based upon the expectation that they would have an opportunity to get a return on their investment from rentals and sales.

Cox is a provider of Internet service to residential and business subscribers. Massive piracy of Petitioners' motion pictures by Internet users such as Cox's hinders Petitioners' opportunity to get a return on their investments.

On April 13, 2023, Petitioners filed their application for a subpoena pursuant to 17 U.S.C. §512(h).  *See* Doc. #1.  Petitioners acknowledged in their application

20-023Ga

the decisions of *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) and *In re Charter Communications, Inc.*, 393 F.3d 771, 776-77 (8th Cir. 2005) but argued that the issue had not yet been considered in this circuit.[1]  The court issued the subpoena that same day.  *See* Doc. #3.

On April 17, 2023, Petitioners served the subpoena on Cox's Delaware registered agent.  *See* Ex. "5".

On May 25, 2023, John Doe made a single page objection "…objecting to having my personal information released."[2]  Doc. #4.

On May 26, 2023, Magistrate Judge Porter issued an Order construing the objection as a motion to quash and ordering Petitioners to respond.  *See* Doc. #5.

On May 29, 2023, Petitioners filed an Opposition correctly pointing out that Doe failed to argue a privacy interest, burden or any other recognized legal basis for quashing the subpoena.  *See* Doc. #6.  Petitioners served a copy of their Opposition on Cox.  *See* Doc. #7, p.2.   Cox did not file any response.  Nor did Doe file a reply.

On June 27, 2023, Cox responded to the subpoena by providing all subscriber identifications except John Doe's without any objections or reservations.

On Aug. 31, 2023, Magistrate Judge Porter issued a Findings and Recommendation ("F&R") concluding that (i) Cox is a mere conduit service

---

1 The application mistakenly stated "Tenth" instead of Ninth Circuit.
2 The objection did not comply with LR 5.2 for filing sealed documents.

20-023Ga

provider; and (ii) the §512(h) subpoena is invalid for being based upon a §512(c)(3)(A) notification to the mere conduit provider Cox.  *See* Doc. #8.

On Sept. 11, 2023, Petitioners filed their objections to the F&R. *See* Doc. #10.

On Sept. 26, 2023, Cox filed a Notice of intent to Respond to Petitioners' objections that identified itself as "Non-Parties".  *See* Doc. #13.  On Sept. 28, 2024, Cox filed its Response in which it stated, "Cox writes to correct the record in certain respects."  Doc. #16,

On Oct. 9, 2023, Petitioners filed a Reply to Cox's response.  *See* Doc. #24

On Nov. 8, 2023, the Court issued an Order requesting that Cox "file with the court appropriate evidentiary proof that it is—or is not—an internet service provider under 17 U.S.C. § 512(a)".  Doc. #26, p.3.

On Nov. 29, 2023, Cox submitted a declaration from its Chief Compliance and Privacy Officer Amber Hall.  *See* Doc. #29.

On Dec. 5, 2023, Petitioners filed their response to Ms. Hall's declaration. *See* Doc. #30.

On Jan. 30, 2024, the Court issued the Order quashing the subpoena and ordering Petitioners to *inter alia* destroy any information derived from the subpoena. *See* Doc. #31.

On Jan. 31, 2024, the Petitioners filed an urgent motion for a stay of the Order pending appeal.  *See* Doc. #32.

20-023Ga

On Feb. 1, 2024, the Court issued an order suspending the order pending ruling on the motion for a stay.  *See* Doc. #33.

On Feb. 5, 2024, Petitioners withdrew their request for the information for John Doe by letter to Cox.  *See* Doc. #35-3.

On Feb. 12, 2024, Petitioners filed their motion for reconsideration of the order invalidating the subpoena. *See* Doc. #35.

On Feb. 15, 2024, Cox filed an opposition to the stay request. *See* Doc. #37.

On Feb. 28, 2024, Cox filed an opposition to Petitioners' motion for reconsideration and a motion to strike.  *See* Docs. ##38-39.

On Feb. 28, 2024, Petitioners filed their reply to Cox's opposition to their motion for reconsideration.  *See* Doc. #40.

## II.    LEGAL STANDARD

Courts have noted that motions to strike are generally "disfavored," *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014), and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038 (C.D. Cal. 2012).

"A movant for leave to intervene under Rule 24(a)(2) must have Article III standing to participate in proceedings before the district court." *City of Cleveland v. Nuclear Regulatory Comm'n*, 305 U.S. App. D.C. 162, 17 F.3d 1515, 1517 (1994).

20-023Ga

Article III standing requires three elements: (1) the party must have suffered in injury in fact that is: (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood rather than speculation that the injury will be addressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

## III.  ARGUMENT

### A.  Petitioners' inclusion of a declaration in support of their motion was appropriate.

Cox accuses Petitioners of "using the Declaration to attempt to improperly supplement the record". Mot. at PageID.284.  Firstly, although in the context of a Rule 12(f) motion, the Ninth Circuit has rejected as having "no merit" the argument that deletion is necessary to keep a party from improperly augmenting the record for appeal.  *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Secondly, the argument is false.  Petitioners have respectfully asserted that the Court made a mistake by considering terminating a connection by null routing the same as terminating service.  To support this assertion, Petitioners included the declaration of David Cox ("D. Cox") to explain the technical features of null routing and, importantly, how null routing does not terminate Internet service.  Accordingly, Petitioners are not clarifying a previous expert declaration as in *Alvarez v. NBTY,*

20-023Ga

*Inc.*, No. 17-cv-00567-BAS-BGS, 2020 U.S. Dist. LEXIS 983, at *3-4 (S.D. Cal. Jan. 3, 2020).  Notably, Cox does not even try to dispute declarant D. Cox's points that null routing does not terminate Internet service and that Cox itself null routes certain customers when it places them in a walled garden.  Cox does not like the message, so it seeks to shoot the messenger by filing this motion to strike.

Contrary to Cox's assertion, Courts in this circuit routinely consider declarations submitted in support of motions for reconsideration.  *See In re Plum Baby Food Litig.*, No. 4:21-cv-00913-YGR, 2023 WL 3493319, 2023 U.S. Dist. LEXIS 87696, at *6 (N.D. Cal. May 3, 2023) (Denying  motion to strike declaration submitted in support of its motion for reconsideration because the opinions in the declaration "…provide general background relevant to the arguments presented..."); *Savetsky v. Pre-Paid Legal Servs.,* No. 14-03514 SC, 2015 WL 1925624, 2015 U.S. Dist. LEXIS 55595, at *1-3 (N.D. Cal. Apr. 28, 2015) (denying Plaintiff's motion to strike declaration Defendant submitted in support of motion for reconsideration). Likewise, the Court should consider the declaration of D. Cox.

Cox argues that *Aoki v. MobileHelp, LLC*, 2022 WL 972419, 2022 U.S. Dist. LEXIS 60474 (D. Haw. Mar. 31, 2022) supports striking a declaration in support of a motion for reconsideration.  But in *Aoki* the Court struck exhibits Plaintiff attached to a *reply brief* that had no bearing on the issued raised in the opening motion in violation of L.R. 7.2.  Here, Petitioners included the declaration in their *opening*

20-023Ga

*brief*.  Thus, unlike in *Aoki*, Cox had an opportunity to submit its own declaration to contradict the declaration of D. Cox.

Cox also relies on *SmartGene, Inc. v. Advanced Biological Labs.*, SA, 915 F. Supp. 2d 69, 72 (D.D.C. 2013) to argue that Petitioners cannot submit "supplemental material".  Mot., PageID.284.  Unlike the extreme facts of *SmartGene* where the movant submitted over 1500 pages of declarations and exhibits, Petitioners only submitted one declaration with two exhibits that combine for 17 pages.  Notably, the same Court later distinguished *SmartGene* as not involving "correction of a factual assertion" in *Ecological Rights Found. v. United States EPA*, 541 F. Supp. 3d 34, 56 n.10 (D.D.C. 2021) in denying a motion to strike a declaration submitted in support of a motion for reconsideration.  Likewise, here Petitioners seek to correct a factual assertion in this Court's order concerning null routing which they respectfully assert is a mistake.  But nonetheless, this Court is not bound by the decision of *SmartGene* from a different district court in a different circuit, particularly one that same court declined to follow.

Cox also cites *Haw. Stevedores, Inc. v. HT&T Co.*, 363 F. Supp. 2d 1253, 1270 (D. Haw. 2005) and *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) where movants first raised issues of admiralty jurisdiction and a North Carolina choice of law provision in motions for reconsideration, respectively.

20-023Ga

Neither of these cases involved a motion to strike.  Cox's arguments here appear to be a mere continuation of its opposition to Petitioners' motion for reconsideration.

Cox also argues that the exhibits to Mr. D. Cox's declaration should not be considered because they could have been submitted with Petitioners' initial objection.  *See* Opp., PageID285.  Both exhibits are necessary to illustrate what Petitioners respectfully assert are technical mistakes in the order that could not have been anticipated.  D. Cox points out that BitTorrent traffic can be mitigated by blocking the specific listening ports specified in the BitTorrent protocol.  *See* Doc. #32, ¶14.  Exhibit "A" to his declaration is a copy of the actual BitTorrent protocol where certain ports are specified.  D. Cox also points out that null routing an IP address will mitigate BitTorrent traffic because the trackers will broadcast inaccurate information.  *See* Doc. #32., ¶19.   Exhibit "A" to his declaration illustrates that the BitTorrent protocol states that the IP address is a parameter stating where the peers are located.  Exhibit "B" to his declaration illustrates the different tiers of network providers of Internet service.  D. Cox points out that because Cox is a Tier 2 provider, it can null route an IP address.  In comparison, a Tier 1 network provider or IXP cannot null route an IP address without wreaking havoc on numerous downstream points.  *See* Doc. #32, ¶¶26-31.  Notably, Cox does not question the accuracy of these exhibits or D. Cox's assertions concerning null routing, filtering or port blocking.  Both exhibits show the proper background of D. Cox's statements in his

9

declaration and support the only logical conclusion – that his statements are accurate. If Petitioners had not included a declaration in support of their arguments, Cox would undoubtedly argue that Petitioners' argument was merely unsupported attorney arguments.

Cox also argues that the declaration of D. Cox should be stricken because it discussed port blocking or filtering. *See* Mot., PageID283. However, Cox concedes that Petitioners raised the issue of port blocking and filtering, albeit in the context of content modification. *See id.* Accordingly, because these issues are on the record, it was appropriate for Petitioners to point out that these are alternative means that can be used to mitigate unlawful BitTorrent traffic.

**B. Cox does not have standing to file motions or oppositions in this matter.**

Petitioners have repeatedly argued that Cox lacks standing because it is not a party to this proceeding. *See* Doc. #24, PageID.131 (Arguing Cox lacks standing to contest the subpoena or respond), Doc. #32-3, PageID.189 (qualifying meet and confer request as "To the extent Cox is a party…"), and Doc. #40, PageID.298 (objecting to Cox's filing without first seeking leave to intervene). It is undisputed that Cox never filed any objections to the subpoena or a motion to quash. Moreover, Cox did not even argue in its Opposition that it had any interest or would suffer a cognizable injury if the Court denied Petitioners' motion for a stay. *See* Doc. #37, PageID.244. Cox cannot even satisfy the standard to be an intervenor because it has

not suffered any injury sufficient for Article III standing. Particularly, because Petitioners withdrew their request for John Doe's identification information, Cox has already fully responded to the subpoena. Thus, Cox has no cognizable injury sufficient for standing to file any motions in these proceedings, let alone a motion to strike. At best, if Cox wishes for the Court to consider its views on the applicability of 17 U.S.C. § § 512(a)-(d), Cox can move for leave to file an amicus brief.

## IV.   CONCLUSION

The declaration of David Cox Petitioners submitted in support of their motion for reconsideration merely points out what Petitioners assert are technical errors in the Court's order. Cox, who does not even have standing to object, had the opportunity to submit its own competing declaration when it (inappropriately) filed its own opposition to the motion for reconsideration. Accordingly, Cox's motion to strike should be denied.

DATED: Kailua-Kona, Hawaii, Mar. 8, 2024.


CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Petitioners

20-023Ga