IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE: | CIV. NO. 23-00426 JMS-WRP |
| SUBPOENA OF INTERNET SUBSCRIBERS OF COX COMMUNICATIONS, LLC AND COXCOM LLC. | ORDER (1) GRANTING COX'S MOTION TO STRIKE, ECF NO. 39; (2) DENYING PETITIONERS' MOTION FOR RECONSIDERATION, ECF NO. 35; AND (3) CLARIFYING RELIEF AND DENYING PETITIONERS' MOTION TO STAY, ECF NO. 32 |

**ORDER (1) GRANTING COX'S MOTION TO STRIKE, ECF NO. 39; (2) DENYING PETITIONERS' MOTION FOR RECONSIDERATION, ECF NO. 35; AND (3) CLARIFYING RELIEF AND DENYING PETITIONERS' MOTION TO STAY, ECF NO. 32**

## I.      INTRODUCTION

Before the court are three motions.  Voltage Holdings, LLC;

Millennium Funding, Inc.; and Capstone Studios Corp. (collectively "Petitioners")

filed two motions in response to the court's January 30, 2024 Order Overruling

Objections and Adopting Findings and Recommendation to Quash 512(h)

Subpoena (the "Order to Quash").  ECF No. 31 (available at *In re Cox Commc'ns.,*

*LLC*, 2024 WL 341069 (D. Haw. Jan. 30, 2024)).  The first is an Emergency

Motion to Stay requesting a stay of the part of the Order to Quash that requires

Petitioners to "return and/or destroy" and to "maintain no further record of" the

information they obtained from their subpoena.  ECF No. 32 at PageID.175–176.

The second is a Motion for Reconsideration, ECF No. 35, of the Order to Quash,

attaching a declaration, ECF No. 35-2.  The third is Cox Communications LLC's

("Cox") Motion to Strike that declaration.  ECF No. 39.

 For the reasons to follow, the court GRANTS Cox's Motion to Strike,

DENIES Petitioners' Motion for Reconsideration, and DENIES Petitioner's

Motion to Stay, but clarifies the scope of the relief granted by the Order to Quash.

## II. <u>BACKGROUND</u>

 The background of this action is laid out fully in the Order to Quash.

*See* ECF No. 31.  In brief, in an Application for 512(h) Subpoena[1], Petitioners

identified the IP addresses of certain individuals who allegedly distributed copies

of Petitioners' copyrighted film using peer-to-peer ("P2P") filesharing.  ECF No. 1

at PageID.2.  Petitioners then subpoenaed Cox, these individuals' internet service

provider ("ISP"), to discover their identities, and provided a list of IP addresses

(the "Subpoena").  *Id.* at PageID.2; ECF No. 1-1 at PageID.7.  Cox gave its

subscribers an opportunity to object to the disclosure of their identities, and one

subscriber ("John Doe") did so.  ECF No. 4.  The Magistrate Judge construed John

Doe's letter of objection as a motion to quash, ECF No. 5, and recommended that

---

[1]  The subpoena was sought under 17 U.S.C. § 512(h), part of the Digital Millennium
Copyright Act ("DMCA").

the Subpoena be quashed because it was invalid under § 512(h).  ECF No. 8 at

PageID.54 (Findings and Recommendation to Grant John Doe's Motion to Quash

512(h) Subpoena, hereinafter "F&R").  Petitioners objected to the F&R, and Cox

filed a response to Petitioners' objections.  This court reviewed the F&R and

affirmed the Magistrate Judge's decision that the Subpoena was invalid.  In so

doing, the court ordered Petitioners to "return and/or destroy any information

derived from the Subpoena, to maintain no further record of the information

obtained [from] the Subpoena, and to make no further use of the subscriber data

obtained from the Subpoena."  ECF No. 31 at PageID.173.

Petitioners filed an Emergency Motion to Stay, ECF No. 32, to which

Cox submitted a Response, ECF No. 37, and Petitioners filed a Reply, ECF No. 40.

Petitioners also filed a Motion for Reconsideration, ECF No. 35, attaching a

declaration of David Cox ("D. Cox Declaration"), ECF No. 35-2, with three

exhibits attached.  Cox submitted a Response to the Motion for Reconsideration,

ECF No. 38, and a Motion to Strike the declaration and exhibits, ECF No. 39.

Petitioners filed a Memorandum in Opposition to the Motion to Strike, ECF No.

42, and Cox filed a Reply, ECF No. 43.  The court decides these motions without a

hearing pursuant to Local Rule 7.1(c).

## III.   <u>DISCUSSION</u>

### A.   **Motion to Strike**

Before considering Petitioners' Motion for Reconsideration, the court considers Cox's Motion to Strike the David Cox Declaration attached to Petitioners' Motion and its exhibits.  David Cox has a Bachelor of Science in Information Technology and owns an IT consulting company.  ECF No. 35-2 at PageID.210.  His declaration provides technical information in support of Petitioners' arguments concerning "null routing" and "port blocking and filtering."[2]  Cox asks that the court use its "inherent power to control [its] docket" to strike the declaration attached to Petitioners' Motion for Reconsideration, arguing that there is no reason Cox could not have raised the argument and filed the declaration and exhibits earlier in the litigation.  ECF No. 39-1 at PageID.277.

"A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis omitted) (holding that plaintiffs could not raise a choice of law

---

[2] The "null routing" argument was raised in Petitioners' Objections, but the "port blocking and filtering" argument was not.  Petitioners assert that their port blocking and filtering argument is not new, but in their prior brief, they only mention port blocking and filtering in opposition to Cox's declarant's statement that "material is transmitted through [Cox's] system or network without modification of its content."  ECF No. 30 at PageID.146–147.  Petitioners never argued that port blocking and filtering support their interpretation of § 512(d), which is the only holding Petitioners challenge on reconsideration.

4

argument on reconsideration because they had prior notice that choice of law could be relevant and could have raised the argument in the original objections and hearings); *see also Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1557 n.4 (9th Cir. 1987) (holding that the district court did not abuse its discretion when it refused to consider affidavits filed in support of a motion for reconsideration when the appellant had no excuse for not presenting them previously); *Frederick S. Wyle Pro. Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985) (affirming denial of a motion for reconsideration because the purportedly "newly discovered evidence" attached to it was available before the court's disposition); *Sulak v. Am. Eurocopter Corp.*, 2009 WL 3425155, at *3 (D. Haw. Oct. 26, 2009) (refusing to consider evidence newly presented on motion for reconsideration because plaintiffs did not explain why they could not have presented the evidence earlier).

The court agrees with Cox:  Petitioners have not shown that this evidence could not have been raised or presented earlier.  In an apparent attempt to avoid this outcome, Petitioners argue that the declaration and exhibits are intended "to correct a factual assertion in this Court's order," namely, that the court "considered terminating a connection by null routing the same as terminating service."  ECF No. 42 at PageID.315, 317.  They argue that the court's "mistake" "could not have been anticipated."  *Id.* at PageID.318.  But Petitioners' premise is

wrong—the court did not hold that "terminating a connection by null routing [is] the same as terminating service."  Rather, it stated that null routing "effectively terminates a network connection," which is a direct quote from a source *Petitioners* cited in their Objections.  ECF No. 31 at PageID.169 (quoting ECF No.10-1 at PageID.70 n.5 (in turn, quoting Ax Sharma, "VPN provider bans BitTorrent after getting sued by film studios," (March 12, 2022) https://www.bleepingcomputer.com/news/security/vpn-provider-bans-bittorrent-aftergetting-sued-by-film-studios/ [https://perma.cc/R2KG-JY7Z])).  Thus, Petitioners already had ample opportunity to present evidence regarding what null routing is, and Petitioners certainly could have anticipated that the court would reference a source they themselves cited.  *Kona Enters.,* 229 F.3d at 890. Petitioners may not have a "second bite at the apple" because they do not like the court's conclusion.[3]

---

[3] Petitioners also argue that Cox has no standing to "file motions or oppositions in this matter."  ECF No. 42 at PageID.319.  Because Cox never filed a timely objection to the subpoena or the Motion to Quash, and because Petitioners withdrew their request for John Doe's identification information, ECF No. 35-3 at PageID.228, Petitioners argue that Cox has no cognizable injury sufficient to file any motions in this proceeding.  ECF No. 42 at PageID.319.

It is undisputed that the Subpoena was directed to and served on Cox—so, in that sense, Cox was a party to the Subpoena.  ECF No. 1.  Although only John Doe moved to quash, Cox entered this proceeding to respond to Petitioners' interpretation of § 512 advanced in their Objections to the F&R—namely, Petitioners' argument that Cox falls under § 512(d).  *See* ECF No. 18 at PageID.107–108.  That argument certainly implicated Cox's rights.  Cox's objection to Petitioners' argument that its subpoena was valid under § 512(h), is a type of objection to Petitioners' § 512(h) subpoena, even if it was late.  *See McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("In unusual circumstances and for good cause, . . . the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena].").  The court finds good

(continued . . . )

The court STRIKES the David Cox Declaration and its exhibits.

**B.    Motion For Reconsideration**

*1.    Standard of Review*

In their Motion for Reconsideration, Petitioners rely on Federal Rules of Civil Procedure 59(e) and 60, and, to the "extent applicable," Local Rule of Practice for the United States District Court for the District of Hawaii ("LR") 60.1. ECF No. 35 at PageID.199.

A district court can reconsider final judgments or appealable interlocutory orders pursuant to Federal Rules of Civil Procedure 59(e) (governing motions to alter or amend judgments) and 60(b) (governing motions for relief from a final judgment). *See Balla v. Idaho Bd. of Corr.*, 869 F.2d 461, 466–67 (9th Cir. 1989); *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). Under LR 60.1, reconsideration is permitted only where there is "(a) Discovery of new material facts not previously available; (b) Intervening

---

cause to consider Cox's objections here—Cox is acting in good faith, and substantially complied with the subpoena except to the extent the subpoena sought the information of John Doe. *Id.* Indeed, the court specifically asked Cox to submit briefing and evidence on a "potentially important" and complex technical issue of whether Cox was an internet service provider or "mere conduit" under § 512(a) for purposes of the very subpoena at issue. *See* ECF No. 26 at PageID.136–37. The court also *directed* Cox to file an Opposition/Response to Petitioners' Motion for Reconsideration. *See* ECF No. 36. It also appears that Cox stands to incur new costs or obligations if the court were to adopt Petitioners' construction of § 512(d) (because it would then be subject to § 512(h) subpoenas seeking the identities of P2P infringers). Thus, the court rejects Petitioners' standing argument.

change in law; [or] (c) Manifest error of law or fact."  LR 60.1; *Sierra Club, Haw.*

*Chapter v. City & Cnty. of Honolulu*, 486 F. Supp. 2d 1185, 1188 (D. Haw. 2007)

("Local Rule 60.1 explicitly mandates that reconsideration only be granted upon

discovery of new material facts not previously available, the occurrence of an

intervening change in law, or proof of manifest error of law or fact.").

Reconsideration is an "extraordinary remedy, to be used sparingly in

the interests of finality and conservation of judicial resources" and "may not be

used to raise arguments or present evidence for the first time when they could

reasonably have been raised earlier in the litigation."  *Kona Enters.*, 229 F.3d at

890 (citations, emphasis, and internal quotation marks omitted); *see Exxon*

*Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008); *see also* LR60.1 ("Motions

for reconsideration are disfavored.").  A motion for reconsideration must

"[f]irst, . . . demonstrate reasons why the court should reconsider its prior decision"

and "[s]econd, . . . set forth facts or law of a strongly convincing nature to induce

the court to reverse its prior decision."  *Yonemoto v. McDonald*, 2015 WL

12711230, at *1 (D. Haw. Apr. 23, 2015) (citations and internal quotation marks

omitted).

Mere disagreement with a previous order is an insufficient basis for

reconsideration, and reconsideration may not be based on evidence and legal

arguments that could have been presented at the time of the challenged decision.

*See Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *White v. Sabatino*, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (internal quotation marks omitted) (quoting *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

### 2. *Background to § 512(d)*

To provide the necessary background to address Petitioners' arguments on reconsideration, the court first summarizes its conclusion in its Order to Quash that § 512(d) does not apply to ISPs in the context of P2P filesharing, and its reasons for rejecting Petitioners' argument otherwise. *See* ECF No. 31. The court then addresses each of Petitioners' arguments on reconsideration in turn.

The question initially posed to the court was whether Petitioners' § 512 subpoena on Cox was valid—specifically, whether Petitioners fulfilled the notice requirement of § 512(h). Section 512(h) requires that a request for subpoena contain "a copy of a notification described in subsection (c)(3)(A)."[4] 17

---

[4] 17 U.S.C. § 512(h) reads in relevant part (emphases added):

**(h) Subpoena to identify infringer.—**
  **(1) Request.**—A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
  **(2) Contents of request.**—The request may be made by filing with the clerk—
                                                              (continued . . . )

U.S.C. § 512(h)(2)(A).  Subsection (c)(3)(A) requires Petitioners' notification to

contain an "[i]dentification of the material that is claimed to be infringing or to be

the subject of infringing activity and that is to be removed or access to which is to

be disabled . . . ."  17 U.S.C. § 512(c)(3)(A).[5]

---

> **(A)** *a copy of a notification described in subsection (c)(3)(A)*;
> **(B)** a proposed subpoena; and
> **(C)** a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title.
>
>  **(3) Contents of subpoena.**— The subpoena shall authorize and order the service provider receiving the notification and the subpoena to expeditiously disclose to the copyright owner or person authorized by the copyright owner information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider.
>
>  **(4) Basis for granting subpoena.**—If the notification filed satisfies the provisions of subsection (c)(3)(A), the proposed subpoena is in proper form, and the accompanying declaration is properly executed, the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requester for delivery to the service provider.

[5] Subsection (c)(3)(a) reads (emphasis added):

>  **(3) Elements of notification.**—
>
>   **(A)** To be effective under this subsection, a notification of claimed infringement must be a written communication provided to the designated agent of a service provider that includes substantially the following:
>
>    **(i)** A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
>    **(ii)** Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
>    **(iii)** *Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.*
>
>    **(iv)** Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
>                                                  (continued . . . )

10

Three of the safe harbors laid out in  § 512 contain "notice and take down" provisions providing that, upon notice to the ISP, the ISP must remove either the infringing material (§ 512(b) and (c)) or the link to the infringing material (§ 512(d)).[6]  The safe harbor in § 512(a) does not contain a "notice and take down" provision.  Section 512(a) protects ISPs from liability for "transmitting, routing, or providing connections for" material through a system or

---

**(v)** A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

**(vi)** A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

[6]  The relevant portions of 17 U.S.C. § 512(b), (c), and (d) read (emphases added):

**(b) System caching**.—
    **(1) Limitation on liability.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of *the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider* . . . .

**(c) Information residing on systems or networks at direction of users.**—
    **(1) In general.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of *the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider* . . . .

   **(d) Information location tools.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider *referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link* . . . .

network.[7]  17 U.S.C. § 512(a); *see also In re Charter Commc'ns, Inc. Subpoena Enf't Matter*, 393 F.3d 771, 775 (8th Cir. 2005) (observing that § 512(a) limits liability for ISPs that serve as a "mere conduit").  The safe harbor in § 512(a) does not require ISPs to take down material upon receiving notice from a copyright owner—if an ISP is a "mere conduit," nothing is stored, and there is nothing to take down.  *Cf. In re Charter*, 393 F.3d at 775.  Conversely, although their wording differs, each of the safe harbors in § 512(b), (c), and (d) requires that, when notified of alleged infringement by a copyright owner, an ISP take down the infringing material or the link to the infringing material.  *Compare* 17 U.S.C. § 512(a), *with* 17 U.S.C. § 512(b)(2)(E), 17 U.S.C. § 512(c)(1)(C), *and* 17 U.S.C.

---

[7]  17 U.S.C. § 512(a) reads (emphasis added):

   **(a) Transitory digital network communications.**—A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the provider's *transmitting, routing, or providing connections for,* material through a system or network controlled or operated by or for the service provider, or by reason of the intermediate and transient storage of that material in the course of such transmitting, routing, or providing connections, if—

   **(1)** the transmission of the material was initiated by or at the direction of a person other than the service provider;

   **(2)** the transmission, routing, provision of connections, or storage is carried out through an automatic technical process without selection of the material by the service provider;

   **(3)** the service provider does not select the recipients of the material except as an automatic response to the request of another person;

   **(4)** no copy of the material made by the service provider in the course of such intermediate or transient storage is maintained on the system or network in a manner ordinarily accessible to anyone other than anticipated recipients, and no such copy is maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary for the transmission, routing, or provision of connections; and

   **(5)** the material is transmitted through the system or network without modification of its content.

§ 512(d)(3).  The notice and take down provisions within § 512 (b), (c), and (d) all require that the notice from the copyright owner first meet the requirements of Subsection (c)(3)(A).  In contrast, the "mere conduit" safe harbor in § 512(a) does not contain any notice and take down provision referring to Subsection (c)(3)(A)— because there is no material to take down.

Petitioners conceded that Cox acts as a "conduit" for P2P infringement under the safe harbor in § 512(a), but argued that Cox also falls under § 512(d): it "refer[s] or link[s]" users to infringing material using "information location tool[s]."  ECF No.10-1 at PageID.68.  Petitioners contended that the IP addresses Cox assigns to users like John Doe are *both* "information location tool[s]" *and* "online location[s] containing infringing material."  ECF No. 24 at PageID.125–126.  Therefore, Petitioners argued that the list of IP addresses of alleged infringers that they attached to their request for subpoena was adequate notice to Cox of the "reference or link, to material or activity claimed to be infringing" that they wanted Cox to take down.  ECF No. 10-1 at PageID.69, 72.  Petitioners also claimed that it is possible for Cox to stop its users' infringing activity by null routing infringers' IP addresses.  ECF No. 10-1 at PageID.70 n.5, 73.

The court rejected those arguments, and held that Cox falls only under § 512(a), not § 512(d), and therefore, Petitioners' notice to Cox was invalid.  ECF

No. 31 at PageID.168. Cox's assigning IP addresses to its subscribers does not

constitute "refer[ring] or link[ing] users to an online location containing infringing

material or infringing activity" under § 512(d), because an ISP assigning an IP

address to a user does not actively "refer[] or link[]" that user to any other IP

address. *Id.* at PageID.167. Cox assigns each of its users an IP address

automatically—then, in the case of P2P filesharing, those users locate each other's

IP addresses using a P2P filesharing system and share files. *Id.* It is the P2P

system—not the ISP—that links internet users with files available to distribute

with those seeking to download them. *Id.* Compared to a search engine, which

accomplishes a referencing or linking function by actively furnishing links in

response to a query, the ISP's assignment of IP addresses to individual internet

users does not actively link or refer any internet user to the IP address of any other

internet user. *Id.* at PageID.168–169. Thus, the court concluded that Cox does not

fall under § 512(d), the list of IP addresses is not valid notice under § 512(c)(3)(A),

and the Subpoena is invalid.

### 3. *Arguments on Reconsideration*

#### a. *Null routing*

On reconsideration, Petitioners have renewed their "null routing"

argument from their Objections to the F&R. ECF No. 35-1 at PageID.202–204.

The court has already considered and rejected this argument. ECF No. 31 at

PageID.169–170.  Moreover, the argument is ancillary to the court's interpretation of § 512(d)—even if Petitioners were right, it would not change the determination set forth above.  Nonetheless, the court further explains its reasoning for rejecting this argument in detail below.

The Magistrate Judge—in support of his conclusion that Petitioners' list of IP addresses was inadequate notice under § 512(c)(3)(A)—reasoned that "a conduit ISP cannot remove or disable one user's access to infringing material resident on another user's computer because the ISP does not control the content on its subscribers' computer."  ECF No. 8 at PageID.51 (citing *Verizon*, 351 F.3d at 1236 ("The [copyright owner's] notification identifies absolutely no material [the ISP] could remove or access to which it could disable, which indicates to us that § 512(c)(3)(A) concerns means of infringement *other* than P2P file sharing.") (emphasis in F&R)).  To illustrate using the present parties, Cox would not be able to delete files containing Petitioners' copyrighted films, which, after being downloaded via P2P, are stored on the computers of individuals engaged in P2P filesharing.  In other words, because an ISP cannot remove, or disable access to, the material that is claimed to be infringing under subsections § 512(d)(3) and (c)(3)(A)—the files containing the copyrighted films—it is unlikely that the ISP's assignment of IP addresses falls under § 512(d).

Petitioners disagreed and appealed to this court, arguing that an ISP *can* disable access to "infringing material" through null routing, which is where an ISP "*effectively terminat[es] a network connection*, where it has received multiple notices of copyright infringement associated with an IP address."  ECF No. 10-1 at PageID.70 n.5 (quoting Ax Sharma, "VPN provider bans BitTorrent after getting sued by film studios," (March 12, 2022) https://www.bleepingcomputer.com/news/security/vpn-provider-bans-bittorrent-aftergetting-sued-by-film-studios/ [https://perma.cc/R2KG-JY7Z]) (emphasis added)).  Petitioners argued that IP addresses are *in themselves* "references or links to infringing material or activity," and therefore ISPs actually *can* "disable access to" "references or links to infringing material or activity" by null routing IP addresses engaged in P2P filesharing.  *Id.* at 69–70.  Consequently, Petitioners argued, the "remove, or disable access to" language in § 512(d) poses no barrier to IP addresses being considered "information location tools" that "refer[] or link[]" users to infringing material under §512(d).  *Id.* at 70.  In other words, ISPs are able to "take down" links or references to infringing material through such methods as null routing and therefore they fit within § 512(d).

Although this court did not rest its interpretation of § 512(d) primarily on the "remove, or disable access to" language (as discussed above, it relied instead on whether IP addresses function as "information location tools" that

"refer[] or link[]" users to infringing activity in the context of P2P filesharing), it nonetheless rejected Petitioners' "null routing" argument. It held that an ISP's ability to null route IP addresses does not make Petitioners' interpretation of the statute any more plausible. Null routing a subscriber's IP address is not equivalent to "remov[ing], or disabl[ing] access to" links to infringing material or activity, because null routing a user's IP address has the outsize effect of terminating that address's connection to the network (thus terminating access to the internet for any user of that IP). The DMCA distinguishes between terminating "access to infringing material," § 512(j)(1)(A)(i), and terminating a subscriber's account, § 512(j)(1)(A)(ii). Thus, the court rejected Petitioners' argument on the basis that "effectively terminating a network connection" from a user's IP address goes beyond terminating "access to infringing material," and therefore, the DMCA does not authorize it.

On reconsideration, Petitioners argue that the Order to Quash was wrong to "argue" that "null routing terminates an account." ECF No. 35-1 at PageID.204. This mischaracterizes the Order to Quash. As explained above, the court did not hold that null routing terminates an account, it held that null routing is a harsher penalty than the DMCA authorizes, given that the DMCA distinguishes between terminating access to infringing material and terminating a subscriber's account (which terminates access to the internet). The court agreed

17

(and agrees) with Petitioners that null routing is not the same as terminating an account, but null routing nonetheless goes further than authorized by the DMCA.

To the extent Petitioners' arguments address a mischaracterization of the Order to Quash, they need not be considered. And to the extent Petitioners' arguments renew their challenge to the court's interpretation of § 512(d), they are improper—mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.[8] *See Haw. Stevedores, Inc.*, 363 F. Supp. 2d at 1269.

---

[8] And, if Petitioners are arguing that the court should reconsider Petitioners' previous statement (which the court adopted) that null routing "effectively terminates a network connection," the court is not convinced. As Petitioners previously stated, null routing or blackhole routing occurs when an ISP redirects traffic destined for an IP address using "a network route that goes nowhere." ECF No. 10-1 at PageID.70 n.5. Petitioners may be correct that a user whose IP address is null routed may obtain a new IP address, or may be routed to a hard- or soft-walled garden prompting him to contact his ISP to resume service, ECF No. 35-1 at PageID.203—but his internet access was nonetheless "effectively terminate[d]" from the original IP address.

Petitioners also improperly seek to add evidence of another type of null routing, "destination null routing," that was not referenced in their previous briefing. Because this argument is based on the stricken D. Cox Declaration, the court cannot consider it. Even so, from Petitioners' description, "destination null routing" would not enable an ISP to meaningfully impede P2P infringement, and therefore would not support Petitioners' interpretation of § 512(d). According to Petitioners, through "destination null routing," a user "will still be able to use the Internet to access data, but other peers that are Cox accounts will not be able to link to the user's IP address to obtain copies of the pirated content." ECF No. 35-1 at PageID.203. But even if Cox subscribers could no longer torrent files from that IP address, subscribers to *every single other ISP* still could—so Cox would hardly have "remove[d], or disable[d] access to" the infringing links or material under § 512(d). In fact, Petitioners' original null routing argument also suffers from this flaw—if a user can easily obtain another IP address, then null routing is not a meaningful way for an ISP to "remove, or disable access to" infringing material (or links thereto), and is not a reason that ISPs should fall under § 512(d).

> b.    *Port blocking and filtering*

Petitioners also make a new argument that ISPs can use "other means such as port blocking and filtering" to block access to infringing material or activity.  ECF No. 35-1 at PageID.205–206.  Petitioners claim that this new argument is discussed "in the record," but in fact it was not made in their prior brief.[9]  Because Petitioners could have made this argument prior to the court's ruling, it is improper.  *Kona Enters.*, 229 F.3d at 890 (noting that reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation") (citations, emphasis, and internal quotation marks omitted).  In any event, even if it was proper on reconsideration, this argument would fail for the same reasons as Petitioners' "null routing" argument—whether ISPs can in fact "remove, or disable access to" infringing material or not, it would not change the court's interpretation of § 512(d).

---

[9]  As explained above, Petitioners' only reference to port blocking and filtering was an argument that Cox's alleged ability to scan traffic to Cox email addresses "to filter out spam and malicious email" and its "blocking of botnets, viruses, phishing sites, malware, and certain ports," was in conflict with Cox's declaration stating that "material is transmitted through [Cox's] system or network without modification of its content."  ECF No. 30 at PageID.146–147.  Petitioners did not tie this to § 512(d) in any way.

###### c.     Notification language in § 512(c)(3)(A) and § 512(d)(3)

Next, Petitioners argue that the court relied on the language of

§ 512(c)(3)(A) where it should have relied on the language of § 512(d)(3).[10]  ECF

No. 35-1 at PageID.204 (quoting Order to Quash at PageID.166, 169).  Petitioners

emphasize that § 512(d)(3), when it incorporates the notice requirement in

§ 512(c)(3)(A), discusses removal of "*the reference or link*, to material or activity

claimed to be infringing" rather than simply removal of "the material that is

claimed to be infringing."[11]  17 U.S.C. 512(d)(3) (emphasis added).  Thus,

Petitioners argue, the list of IP addresses that Petitioners provided is not

"infringing material" in itself, but is rather an identification of the "reference or

link" to material that is the subject of infringing activity under § 512(d)(3).

---

[10]  Specifically, Petitioners take issue with the court "discuss[ing] whether the list of IP addresses [that they attached to their subpoena] 'could constitute adequate notice under Subsection (c)(3)(A) for infringement under § 512(d)' or whether Cox may remove or disable access to infringing [sic] in the context of § 512(d)."  ECF No. 35-1 at PageID.204 (quoting Order to Quash at PageID.166, 169).

[11]  17 U.S.C. § 512(d)(3) reads (emphasis added):

> **(3)** upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, the information described in subsection (c)(3)(A)(iii) shall be *identification of the reference or link, to material or activity claimed to be infringing*, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link.

To the extent Petitioners seek to clarify the court's summary of their argument on PageID.166 of the Order to Quash, the court recognizes that Petitioners intended to argue that the list of IP addresses was a list of "reference[s] or link[s]" to the infringing material, not the infringing material itself.  But the court rejected this argument in the Order to Quash, holding that IP addresses *are not references or links under § 512(d)* and therefore Petitioners' notification was not adequate under § 512(h).  Order to Quash at PageID.169.  Disagreement with the court is not grounds for reconsideration.  *See Haw. Stevedores,* 363 F. Supp. 2d at 1269.

> d.    *"Failure to qualify for the safe harbor does not equal liability"*

Petitioners next take issue with the court's statement that

> [i]f the assignment of IP addresses to P2P infringers falls under § 512(d), Cox would have no ability to avoid liability for monetary relief for P2P infringement in suits like Petitioners'[12] because although 'notice' by copyright holders would be possible, 'take down' by Cox would not.

ECF No. 31 at PageID.169–170.  Petitioners misread this statement as meaning that "Cox would be liable [for copyright infringement] if it could not take down" infringing material, ECF No. 35-1 at PageID.206, which incorrectly paraphrases the Order to Quash.  The Order to Quash reasoned that Petitioners' interpretation

---

[12]  The phrase, "suits like Petitioners" in the Order refers to copyright infringement suits seeking to hold individuals or corporations liable for P2P filesharing.  ECF No. 31 at PageID.169.

of § 512(d) would result in ISPs (which, according to Petitioners, fall under both

§ 512(a) and § 512(d)) being unable to avoid liability for monetary relief via the

safe harbor in § 512(d) upon notification of claimed infringement, because they

would be unable to remove access to infringing material short of blocking access to

the internet from a particular IP address, which is not authorized by the DMCA.

   e. *"The separate safe harbors of §§ 512(a) and (d) must be evaluated independently"*

   Petitioners take issue with the Order to Quash's statement that "[i]f an

ISP assigning an IP address is both 'providing connections for' infringement under

(a) and 'referring or linking' to infringing material under (d)—as Petitioners

contend—Congress would not have created two separate safe harbors." ECF No.

31 at PageID.168. Petitioners take this to hold that an ISP cannot qualify for two

safe harbors, but they misunderstand. Rather, following the interpretive canon that

courts "presume that Congress did not intend any part of [a] statute to be

superfluous, void, or insignificant," the court reasoned that it was unlikely that

Congress wanted "providing connections for" infringement under § 512(a) to mean

the same thing as "referring or linking" under § 512(d). ECF No. 31 at

PageID.168 (quoting *GCIU-Emp. Ret. Fund v. MNG Enters., Inc.*, 51 F.4th 1092,

1097 (9th Cir. 2022)). Thus, it was unlikely that Cox's assignment of IP addresses

constituted "referring or linking" to infringing activity because this would render

§ 512(a) "superfluous, void, or insignificant." *Id.*

f.   *"The language in the information tools subsection is unambiguous"*

Petitioners argue that because "the meaning of referring or linking is clear," the court's references to other precedents or to legislative history in order to interpret the terms were "unnecessary and improper."  ECF No. 35-1 at PageID.207–208.[13]  Because "a term is ambiguous if it is subject to reasonable alternative interpretations," Petitioners are arguing—again—that their interpretation of § 512(d) is reasonable and the court's is not.  *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1194 (9th Cir. 1996) (internal quotation marks omitted)).  This is improper on reconsideration, and moreover, Petitioners have not cited any precedent or authority to suggest that their interpretation is the only reasonable one.

---

[13]  Here, Petitioners cite two cases that purportedly contradict the court's determination that "referring or linking" denotes "active assistance to users."  The first of these cases does not contradict the court's interpretation—it is aligned.  In *Totally Her Media, LLC v. BWP Media USA, Inc*., 2015 WL 12659912, at *9 (C.D. Cal. Mar. 24, 2015), the "information location tools" in question were user-generated links that were hosted on Plaintiff's web-based social discussion forum such that Plaintiff's forum *actively* "referr[ed] or link[ed]" anyone who accessed it to infringing images.  The second case, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007), was miscited by Petitioners.  The Ninth Circuit held that defendant CCBill *did not* fall under § 512(d), which means that, contrary to Petitioners' statement, the court *did not* consider the hyperlink that defendant generated to be an "information location tool."  *Id.* at 1116–17.  Later, the Ninth Circuit assumed without holding that the hyperlink was an information location tool in order to make a different point—which is the origin of Petitioners' misleading quote.  *Id.* ("*Even if* the hyperlink provided by CCBill could be viewed as an information location tool . . . .") (emphasis added).

## C.    Motion to Stay

### 1.    *Standard of Review*

When a court issues final judgment granting an injunction and an opposing party appeals that judgment, the court may stay the injunction on terms that secure the opposing party's rights.  *See* Fed. R. Civ. P. 62(d).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).  Courts consider the following factors when deciding whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citing *Nken*, 556 U.S. at 426).[14]  "The first two factors . . . are the most critical."  *Id.* (quoting *Nken*, 556 U.S. at 434) (internal quotation marks omitted).  "We consider the last two factors if the first two factors are satisfied."  *Id.*

---

[14]  Both parties agree that the court applies the *Nken* factors to the Emergency Motion to Stay.  *See* ECF No. 32-1 at PageID.179; ECF No. 37 at PageID.237–245.

## 2.    *Clarification of Relief*

Petitioners' Motion to Stay is DENIED.  Petitioners will not be irreparably harmed by the court's injunctive relief, in part because Petitioners have construed the relief to have broader applicability than intended.  *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) ("[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.") (summarizing *Nken*, 556 U.S. at 432).  The court thus clarifies the intended scope of the relief granted by the Order to Quash.

Petitioners' first argument for irreparable harm is that Petitioners will never be able to obtain the information they received from the Subpoena again, because ISPs typically destroy these types of records after six months.  ECF No. 32 at PageID.180; ECF No. 32-2 at PageID.185.  Cox, however, has committed to preserve the information through the pendency of Petitioners' appeal, and states that it would submit to a court order to that effect.  ECF No. 37 at PageID.243.  Accordingly, the court orders Cox to maintain the information.  This is sufficient to allay Petitioners' first concern.

Petitioners' second argument for irreparable harm is premised on a broader construction of the court's injunctive relief than was intended.  Apparently before the F&R issued, Petitioners contacted the individuals Cox identified to

25

them, and have negotiated settlement agreements with some of these individuals in exchange for information on the circumstances behind the infringement, i.e., what websites or software applications they used to obtain the pirated copies of the film. ECF No. 34 at PageID.195.  Petitioners construe the Order to Quash to require them to destroy settlement agreements negotiated between them and various Cox subscribers, which will result in them not being able to comply with their contractual obligations in the settlement agreements.  ECF No. 40 at PageID.301.

But the "information derived from the Subpoena" that Petitioners must "return and/or destroy" and "maintain no further record of" is limited to the actual information that Petitioners received from Cox—likely a physical or electronic file containing the names and addresses of individuals using the IP addresses that Petitioners identified.  The requirement to "return and/or destroy" and "make no further record of" the information derived from the Subpoena does not extend to "secondary" information that Petitioners received through correspondence with the subscribers that were identified on the list received from Cox, or agreements concluded with those subscribers.  Though this "secondary" information need not be "return[ed] and/or destroy[ed]," it does fall under the final clause of the Order to Quash, which requires Petitioners to "*make no further use of*

*the subscriber data* obtained from the Subpoena."[15]  Therefore, Petitioners may maintain records of, for example, correspondence and binding settlement agreements with subscribers, but may not continue to seek settlement with any subscriber who has not yet concluded an agreement, and may not use information received from subscribers as evidence in litigation, e.g., against piracy websites. *See* ECF No. 32-1 at PageID.181.

Because—given the clarification above and Cox's commitment to preserve the information—Petitioners will not suffer irreparable harm, Petitioners' Emergency Motion to Stay is DENIED.

///

///

///

///

///

///

///

---

[15] The court recognizes that Petitioners cannot "unlearn" the identities of individuals they have contracted with, making the destruction of all documents in Petitioners' possession related to any of the individuals identified of limited use in remedying the harm caused by the improperly issued subpoena.  The injunction to "make no further use of the subscriber data" is tailored to remedy the harm while recognizing that Petitioners cannot undo actions they already took in good faith.

## IV.   **CONCLUSION**

Based on the foregoing, the court GRANTS Cox's Motion to Strike,

ECF No. 39, DENIES Petitioners' Motion for Reconsideration, ECF No. 35, and

DENIES Petitioners' Motion to Stay, ECF No. 32.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 26, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*In re: Subpoena of Internet Subscribers of Cox Communications, LLC and CoxCom, LLC,* Civ. No. 23-00426 JMS-WRP, Order (1) Granting Cox's Motion to Strike, ECF No. 39; (2) Denying Petitioners' Motion for Reconsideration, ECF No. 35; and (3) Clarifying Relief and Denying Petitioners' Motion to Stay, ECF No. 32